# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CRISTOSAL HUMAN RIGHTS, *et al.*,

               *Plaintiffs*,

*v.*

PETE MAROCCO, in his official
capacity as the Acting Deputy Administrator for
Policy Planning and for Management and
Resources for the U.S. Agency for International
Development and Director of Foreign
Assistance at the Department of State, *et al.*,

               *Defendants*.

Civil Action No. 1:25-cv-857-LLA

## REPLY IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................3

I.      This Court lacks subject-matter jurisdiction ...........................................3

    A.      Because Plaintiffs challenge actions that this Court already held void, this Court should stay this action pending any changes to that relief and, absent such changes, dismiss this case as moot ..........................3

    B.      The Tucker Act forecloses jurisdiction over Plaintiffs' claims pertaining to their grant agreements ...............................................................4

    C.      Plaintiffs lack Article III standing to obtain much of the relief sought ........................11

II.     Plaintiffs' separation-of-powers claim fails .........................................14

III.    Plaintiffs' *ultra vires* claims fail. .......................................................16

    A.      Plaintiffs fail to state an *ultra vires* claim alleging impoundment. ...................16

    B.      Plaintiffs fail to state an *ultra vires* claim regarding Marocco's appointment as an acting member of the Foundation Board. ..........................17

IV.     Plaintiffs' APA claims fail. ...............................................................20

V.      Any relief should be limited ................................................................22

    A.      Plaintiffs are not entitled to a permanent injunction .............................22

    B.      Relief must be limited to address Plaintiffs' injuries ..........................24

CONCLUSION ..........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State,*
 Nos. 25-cv-00400 & 25-cv-00402 (AHA), --- F. Supp. 3d ---,
 2025 WL 752378 (D.D.C. Mar. 10, 2025) ....................................................................17

*Alcresta Therapeutics, Inc. v. Azar,*
 318 F. Supp. 3d 321 (D.D.C. 2018) ...........................................................................24

*Am. Forest Res. Council v. Williams,*
 96 F.4th 417 (D.C. Cir. 2024) .....................................................................................4

*Am. Ground Transp., Inc. v. United States,*
 165 Fed. Cl. 659 (2023) ...............................................................................................7

*Am. Ins. Ass'n v. Garamendi,*
 539 U.S. 396 (2003) ............................................................................................ 16, 21

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.,*
 64 F.4th 1354 (D.C. Cir. 2023) ..................................................................................23

*Aviel v. Gor,*
 No. 1:25-cv-00778 (D.D.C. Apr. 2025) .......................................................................1

*Berrigan v. Sigler,*
 499 F.2d 514 (D.C. Cir. 1974) ...................................................................................19

*Bowen v. Massachusetts,*
 487 U.S. 879 (1988) ................................................................................................ 7, 9

*Califano v. Yamasaki,*
 442 U.S. 682 (1979) ...................................................................................................24

*California v. U.S. Dep't of Educ.,*
 132 F.4th 92 (1st Cir. 2025) .........................................................................................6

*Chamber of Com. of U.S. v. EPA,*
 642 F.3d 192 (D.C. Cir. 2011) ...................................................................................13

*Chicago Women in Trades v. Trump,*
 No. 25-cv-2005, 2025 WL 1114466 (N.D. Ill. Apr. 14, 2025) ............................. 6, 15

*Church v. Biden,*
 573 F. Supp. 3d 118 (D.D.C. 2021) ...........................................................................24

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.,*
  38 F.4th 1099 (D.C. Cir. 2022) .................................................................. 8, 10

*Dalton v. Specter,*
  511 U.S. 462 (1994) .......................................................................................14

*DCH Reg'l Med. Ctr. v. Azar,*
  925 F.3d 503 (D.C. Cir. 2019) ............................................................... 16, 17

*Department of Education v. California,*
  145 S. Ct. 966 (2025) .......................................................................1, 5, 6, 24

*eBay v. MercExchange, LLC,*
  547 U.S. 388 (2006) ................................................................................ 23, 24

*Franklin-Mason v. Mabus,*
  742 F.3d 1051 (D.C. Cir. 2014) .....................................................................5

*Garrido v. Dudek,*
  731 F.3d 1152 (11th Cir. 2013)....................................................................25

*Genesis Healthcare Corp. v. Symczyk,*
  569 U.S. 66 (2013) ..........................................................................................4

*Gill v. Whitford,*
  585 U.S. 48 (2018) ................................................................................. 12, 24

*Great-West Life & Annuity Ins. Co. v. Knudson,*
  534 U.S. 204 (2002) .......................................................................................7

*Hall v. CIA,*
  437 F.3d 94 (D.C. Cir. 2006) .........................................................................3

*Hartnett v. Pa, State Educ. Ass'n,*
  963 F.3d 301 (3d Cir. 2020) ...........................................................................4

*In re Aiken County,*
  725 F.3d 255 (D.C. Cir. 2013) ............................................................... 16, 17

*In re Nat'l Nurses United,*
  47 F.4th 746 (D.C. Cir. 2022) ......................................................................17

*Ipsen Biopharmaceuticals, Inc. v. Becerra,*
  678 F. Supp. 3d 20 (D.D.C. 2023), *aff'd*, 108 F.4th 836 (D.C. Cir. 2024) .........................14

*JKB Sols. & Servs., LLC v. United States,*
  170 Fed. Cl. 241 (2024)...................................................................................8

*Keener v. Convergys Corp.*,
    342 F.3d 1264 (11th Cir. 2003) ...........................................................................25

*Kimberlin v. Quinlan*,
    199 F.3d 496 (D.C. Cir. 1999) ...................................................................... 18, 19

*Knox v. Serv. Emps. Int'l Union, Loc., 1000*,
    567 U.S. 298 (2012) ...............................................................................................4

*Labrador v. Poe*,
    144 S. Ct. 921 (2024) ...........................................................................................25

*Lary v. U.S. Postal Serv.*,
    472 F.3d 1363 (Fed. Cir. 2006) ...........................................................................10

*LaShawn A. v. Barry*,
    87 F.3d 1389 (D.C. Cir. 1996) ...................................................................... 18, 19

*Mason Tech Sols. Holdings, Inc. v. Infineon Techs. AG*,
    881 F.3d 1323 (Fed. Cir. 2018) .............................................................................9

*Mass. Fair Hous. Ctr. v. Dep't of Hous. & Urb. Dev.*,
    No. 25-cv-30041-RGS, 2025 WL 1225481 (D. Mass. Apr. 14, 2025) ..................6

*McManus v. D.C.*,
    530 F. Supp. 2d 46 (D.D.C. 2007) .......................................................................24

*Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*,
    763 F.2d 1441 (D.C. Cir. 1985) .................................................................... 10, 11

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) .............................................................................................25

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) .............................................................................................24

*Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*,
    785 F.3d 684 (D.C. Cir. 2015) ...................................................................... 23, 24

*Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*,
    979 F. Supp. 2d 104 (D.D.C. 2013) .....................................................................24

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ...............................................................................................21

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ........................................................................................ 12, 13

*Muthana v. Pompeo,*
    985 F.3d 893 (D.C. Cir. 2021) .................................................................................17

*N. Am. Butterfly Ass'n v. Wolf,*
    977 F.3d. 1244 (D.C. Cir. 2020) .............................................................................17

*Newdow v. Bush,*
    391 F. Supp. 2d 95 (D.D.C. 2005) ............................................................................6

*New York v. Trump,*
    No. 25-cv-00039, --- F. Supp. 3d ---,
    2025 WL 715621 (D.R.I. March 6, 2025) ..............................................................17

*Nyunt v. Chairman, Broad. Bd. of Governors,*
    589 F.3d 445 (D.C. Cir. 2009) .................................................................................16

*Perry Capital LLC v. Mnuchin,*
    864 F.3d 591 (D.C. Cir. 2017) ...................................................................................9

*Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.,*
    656 F. Supp. 3d 137 (D.D.C. 2023) ........................................................................13

*Porzecanski v. Azar,*
    943 F.3d 472 (D.C. Cir, 2019) ...................................................................................4

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.,*
    374 F.3d 1251 (D.C. Cir. 2004) ...............................................................................22

*Salazar v. Buono,*
    559 U.S. 700 (2010) .................................................................................................13

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
    591 U.S. 197 (2020) .................................................................................................20

*Sherley v. Sebelius,*
    689 F.3d 776 (D.C. Cir. 2012) .................................................................................19

*Smalls v. United States,*
    471 F.3d 186 (D.C. Cir. 2006) .................................................................................10

*Spectrum Leasing Corp. v. United States,*
    764 F.2d 891 (D.C. Cir. 1985) ...............................................................................8, 9

*Sweis v. U.S. Foreign Claims Settlement Comm'n,*
    950 F. Supp. 2d 44 (D.D.C. 2013) ..........................................................................23

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) .................................................................................................12

*United States v. Curtiss-Wright Exp. Corp.,*
    299 U.S. 304 (1936) ..............................................................................................21

*Widakuswara v. Lake,*
    No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) .......................... 14, 15

*Williams v. Phillips,*
    360 F. Supp. 1363 (D.D.C. 1973) .......................................................................19

*Williams v. Phillips,*
    482 F.2d 669 (D.C. Cir. 1973) ...................................................................... 19, 20

*Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,*
    810 F.2d 243 (D.C. Cir. 1987) .............................................................................18

**Constitutional Provisions**

U.S. Const. art. II, § 1, cl. 1 .......................................................................................20

**Statutes**

5 U.S.C. § 702 .............................................................................................................7

5 U.S.C. § 706 ...........................................................................................................22

31 U.S.C. § 6301 *et seq.* ..............................................................................................8

Further Consolidated Appropriations Act, 2024,
    Pub. L. No. 118-47, Div. F, tit. III, 138 Stat. 460 ...............................................17

**Other Authorities**

*Restatement Second of Contracts* § 357 ....................................................................10

Russel T. Vought Letter to Hon. Susan Collins (May 2, 2025),
    https://www.whitehouse.gov/wp-content/uploads/2025/05/Fiscal-Year-2026-
    Discretionary-Budget-Request.pdf ......................................................................13

## INTRODUCTION

Plaintiffs' efforts to salvage their claims are unavailing. To start, Plaintiffs have already obtained the relief sought (and more) through this Court's order in *Aviel v. Gor*, No. 1:25-cv-00778 (D.D.C.) ("*Aviel*"), that invalidated the very agency actions challenged here. To avoid issuing an impermissible advisory opinion, this Court should therefore stay resolution of the pending motions until there is any change in the status of the relief afforded in *Aviel*. If no such change occurs, this Court must dismiss Plaintiffs' claims as moot.

But even if the action were not moot, this Court lacks jurisdiction over Plaintiffs' claims because Plaintiffs fail to identify any valid waiver of sovereign immunity for their challenges to the termination of their grants and, for Plaintiffs' remaining claims, because Plaintiffs have not established Article III standing. As to the first category of claims, Plaintiffs cannot evade the Supreme Court's statement of the law in *Department of Education v. California*, 145 S. Ct. 966, 968 (2025) (per curiam), that challenges to an agency's termination of grants belong in the Court of Federal Claims, not federal district court. Plaintiffs' insistence that their claims are constitutional and statutory is belied by both the source of the rights asserted (the grant contracts, as no statute mandates payment of funds to Plaintiffs) and the relief they seek (in effect, specific performance). Nor may Plaintiffs evade the requirements of Article III standing, which foreclose Plaintiffs' efforts to obtain relief that would benefit third parties or that would protect Plaintiffs only from uncertain and speculative future harm.

On the merits, Plaintiffs' separation-of-powers claim boils down to the assertion that the Executive Branch's violation of alleged statutory mandates to fund and operate the Inter-American Foundation ("IAF" or the "Foundation") is itself a constitutional violation. But a mere failure to fulfil a statutory obligation is not a violation of the Constitution. In any event, Plaintiffs fail to identify any congressional mandate that Defendants have violated. Plaintiffs do not (and cannot) point to any statute that requires the Foundation to fund Plaintiffs' grants or, indeed, any grants. Nor can Plaintiffs

identify any statute that requires the Foundation to retain Plaintiffs' preferred employees or, indeed, any employees.

Plaintiffs' *ultra vires* claims likewise fail. At the threshold, Plaintiffs do not dispute that Congress carefully crafted a mechanism for judicial review of violations of the Impoundment Control Act. Nor do Plaintiffs dispute that settled D.C. Circuit precedent forecloses *ultra vires* claims when there exists an alternative process for judicial review. In any event, no impoundment took place. If the President directs the Foundation to use its lump-sum appropriations—which do not mandate the use of funds for any particular purpose—for severance payments to reduce unnecessary government expenditures going forward, that is the President's determination to make. Similarly, Plaintiffs' *ultra vires* claims concerning the designation of Pete Marocco as the acting chairman of the Board of the Foundation fail because the President possesses Article II authority to designate acting officials for agencies that fall outside the scope of the Federal Vacancies Reform Act, like the Foundation.

Plaintiffs' Administrative Procedure Act (APA) claims are barred because, by Plaintiffs' own admission, those claims exclusively challenge the termination of the Foundation's grants. The Supreme Court's decision in *California* made clear that the APA is not the proper vehicle to challenge those determinations. And even apart from that threshold issue, Plaintiffs' APA claims merely repackage the *ultra vires* and constitutional claims, and therefore fail for the same reasons.

For these reasons, the Court should stay resolution of the pending motions unless and until the relief afforded in *Aviel* is disturbed. If that relief becomes final, this Court should dismiss the instant action as moot. If the relief in *Aviel* is disturbed, this Court should deny Plaintiffs' motion for summary judgment, dismiss this action for lack of jurisdiction or, in the alternative, grant Defendants' cross-motion for summary judgment. In all events, this Court should limit Plaintiffs' relief to that necessary to remedy their proven injuries, which means no more than an order reinstating Plaintiffs' terminated grant agreements.

## ARGUMENT

### I.    This Court lacks subject-matter jurisdiction.

####    A.    Because Plaintiffs challenge actions that this Court already held void, this Court should stay this action pending any changes to that relief and, absent such changes, dismiss this case as moot.

Plaintiffs do not dispute that their claims exclusively challenge agency actions that this Court held void and without legal effect in *Aviel*.  Accordingly, so long as that relief remains in place, any decision this Court issues is purely advisory.  *See* Combined Mem. in Supp. of Defs.' Cross- Mot. to Dismiss or, in the alternative, for Summ. J. & Opp'n to Pls.' Mot. for Summ. J. ("Defs.' Mem.") at 9-12, ECF No. 25-1.  To avoid issuing an impermissible advisory opinion, this Court should stay this action pending a disposition in *Aviel* that disturbs the relief that this Court granted—*i.e.*, a higher court's stay of this Court's *Aviel* preliminary injunction, a higher court's vacatur of that preliminary injunction, or final judgment in *Aviel* that denies the same relief.  If no such disposition obtains, this Court should dismiss the instant action as moot because this Court would then lack subject-matter jurisdiction to opine on the lawfulness of grant terminations that have not legally occurred.  *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006) ("The rule against deciding moot cases forbids federal courts from rendering advisory opinions or 'deciding questions that cannot affect the rights of litigants in the case before them.'").

Plaintiffs respond (Combined Reply in Supp. of Pls.' Mot. for Summ. J. & Opp'n to Defs.' Cross-Mot. to Dismiss or For Summ. J. ("Opp.") at 2-3, ECF No. 29) that "the grant of relief in *Aviel* is only a temporary injunction to preserve the status quo" and that the government "has appealed this Court's ruling," such that "[t]he status of the *Aviel* order could change at any moment."  Defendants agree that, if the government prevails in *Aviel* either on appeal or on final judgment before this Court, Plaintiffs' claims here would not be moot and this Court could resolve the cross-motions for summary judgment.  But unless and until that occurs, any decision here would not grant meaningful relief to

Plaintiffs and would therefore be an impermissible advisory opinion. *Am. Forest Res. Council v. Williams*, 96 F.4th 417, 421 (D.C. Cir. 2024) ("[A] case is moot if intervening events make it impossible 'to grant any effectual relief.'" (quoting *Porzecanski v. Azar*, 943 F.3d 472, 479 (D.C. Cir, 2019)).[1]

Plaintiffs also argue (Opp. 3 n.1) that this Court's order in *Aviel* could not moot Plaintiffs' requests for relief here because this "Court's ruling in *Aviel* that Defendant Peter Marocco's actions are void ab initio means that they have no legal effect—not that they never 'occurred' as a factual matter." This is a distinction without a difference. That the challenged actions have no legal effect means that, so long as that relief remains in place, any decision issued in this case would not "have direct consequences on the parties involved." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013). That renders Plaintiffs' claims moot. *Id.* at 71-72.

Plaintiffs finally note (Opp. 3) that Defendants did not cite any cases in which a preliminary injunction mooted an action. Defendants recognize that the situation created by this Court's order in *Aviel* is unusual, but the basic principles of mootness still apply: where intervening events preclude meaningful relief, a court lacks Article III jurisdiction. And there is nothing unusual about intervening judicial decisions rendering a case moot. *See, e.g.*, *Hartnett v. Pa, State Educ. Ass'n*, 963 F.3d 301 (3d Cir. 2020) (mootness created by Supreme Court decision).

### B. The Tucker Act forecloses jurisdiction over Plaintiffs' claims pertaining to their grant agreements.

This Court lacks subject-matter jurisdiction because, as the Supreme Court recently held in *California*, 145 S. Ct. at 968, the Tucker Act vests the Court of Federal Claims with exclusive jurisdiction over claims arising out of contractual disputes with the federal government. Plaintiffs' claims

---

[1] *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298 (2012), is not to the contrary. In that case, the defendant union "sent out a notice offering a full refund to all class members" only "[a]fter certiorari was granted" in a series of "maneuvers designed to insulate a decision from review by [the Supreme] Court." *Id.* at 307. Defendants here, however, are not ceasing the challenged conduct on their own initiative; rather, they are doing so under this Court's order.

pertaining to the terminated grant agreements arise out of such contracts, and therefore cannot be resolved by this Court. *See* Defs.' Mem. at 12-23. Plaintiffs' arguments to the contrary are unavailing.

1. Plaintiffs fail to come to terms with the Supreme Court's decision in *California*, 145 S. Ct. 966, which controls here. As Defendants explained, that case is indistinguishable on the facts, and this Court must follow the Supreme Court's clear pronouncements of the law regardless of the procedural posture in which those pronouncements are made. Defs.' Mem. at 12-13. Plaintiffs respond (Opp. 9) by repeating that they "have asserted non-APA claims, including constitutional ones," unlike the *California* plaintiffs. But the Supreme Court's analysis in *California* did not turn on the cause of action asserted—rather, it turned on the waiver of sovereign immunity. *See California*, 145 S. Ct. at 968 ("[T]he APA's limited waiver of immunity does not extend to orders . . . along the lines of what the District Court ordered here."). Plaintiffs do not (and cannot) identify any waiver of sovereign immunity other than the APA's that authorizes their claims, and the Supreme Court's conclusion that the APA's waiver of sovereign immunity does not apply to this context therefore precludes jurisdiction. *See Franklin-Mason v. Mabus*, 742 F.3d 1051, 1054 (D.C. Cir. 2014) ("To bring a claim against the United States, a plaintiff must identify an unequivocal waiver of sovereign immunity.").

Plaintiffs next note (Opp. 9) that they also allege the termination of grants "interfered with their ability to compete for future grants." But Plaintiffs do not explain why the supplemental assertion of future harm (which, in any event, is not cognizable for the reasons explained *infra* Part I.C) changes the contractual nature of their claims. Plaintiffs also repeat their argument that the terms of the contract were at issue in *California*. As another court addressing the same argument explained, however, "[w]hat plaintiffs ignore . . . is that these references" to the contractual terms "occur only in the context of buttressing the larger APA-based argument that the Department of Education did not terminate the grants in accordance with any statutory or regulatory authorization." *Mass. Fair Hous.*

*Ctr. v. Dep't of Hous. & Urb. Dev.*, No. CV 25-30041-RGS, 2025 WL 1225481 (D. Mass. Apr. 14, 2025). In short, "because plaintiffs assert essentially the same claim here -- that the agency did not terminate the grant in accordance with statutory or regulatory authority -- it follows that plaintiffs are likewise likely seeking to enforce a contractual obligation to pay money," and this Court lacks jurisdiction. *Id.*[2]

Plaintiffs also reiterate (Opp. 9) that *California* "was not a ruling on the merits." While the Supreme Court's grant of a stay is not binding on this Court as a ruling on the merits would be, a "district court should not disregard the strong pronouncements of the Supreme Court." *Newdow v. Bush*, 391 F. Supp. 2d 95, 107 (D.D.C. 2005); *see also* Defs.' Mem. at 13 (collecting authorities). The Supreme Court's statement that "the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA," *California*, 145 S. Ct. at 968, is such a strong pronouncement. For that reason, numerous lower federal courts have applied *California* to deny relief in similar grant-termination cases. *See* Defs.' Mem. at 13-14 (collecting authorities).[3] Nor were the equities in *California* relevant to the Supreme Court's pronouncement that such claims should not be brought in federal district court.

Finally, Plaintiffs argue (Opp. 11-12) that *California* cannot mean what it says because "the Supreme Court would have had to overrule *Bowen*." Not so. As Defendants explained, *Bowen v. Massachusetts*, 487 U.S. 879 (1988), did not address a contractual arrangement between a government

---

[2] Plaintiffs quote (Opp. 9) language from the First Circuit's opinion denying a stay pending appeal in *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 97 (1st Cir. 2025), to argue that the grant terms were at issue in that case. But the First Circuit concluded that the grantees' "claims are, at their core, assertions that the Department acted in violation of federal law – not its contracts." *Id.* That is the exact same argument Plaintiffs make here, and plaintiffs' claims in *California*—which were rejected by the Supreme Court—are not distinguishable on that basis.

[3] Plaintiffs collect (Opp. at 10-11) cases in which district courts have held that *California* did not preclude the exercise of jurisdiction over claims involving challenges to grant terminations. Many of those cases involve challenges to grant terminations distinct from those advanced by Plaintiffs here, such as "a contention that the Executive Orders chill First Amendment-protected speech," *Chicago Women in Trades v. Trump*, No. 25-cv-2005, 2025 WL 1114466, at *10 (N.D. Ill. Apr. 14, 2025). Insofar as other district courts have disregarded *California*'s clear instruction, those courts have erred.

agency and private party, but rather concerned states' entitlement to federal funding under a statute. Accordingly, the Supreme Court in that case addressed the APA's exclusion from its waiver of sovereign immunity for suits for "money damages," 5 U.S.C. § 702. That is a different exclusion than that at issue here, which is whether "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought," *id.* Accordingly, the Supreme Court has explained that its jurisprudence addressing the "money damages" carve-out from the APA's waiver of sovereign immunity "has no bearing" on the distinct carve-out at issue here, and thus no bearing on the ability of private parties to obtain injunctions to enforce contractual obligations against the federal government. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002).

2. Plaintiffs also rehash (Opp. 4-5) their argument that the executed agreements between Plaintiffs and the Foundation are not contracts because the government did not receive "any direct benefit from" Plaintiffs. But Plaintiffs acknowledge the United States receives numerous benefits including knowledge and information, royalty-free rights to media, and increased revenue for U.S. flag air carriers. These benefits are neither generalized nor incidental, and both the Court of Federal Claims and Federal Circuit have recognized that similar benefits constitute consideration. *See* Defs.' Mem. at 14-16. Plaintiffs' quibbles boil down to the assertion that the United States did not receive sufficient consideration from Plaintiffs for the grant funds provided. But Plaintiffs do not (and cannot) dispute that contractual counterparties "decide for themselves what consideration is sufficient. If bargained for, a mere peppercorn satisfies." *Am. Ground Transp., Inc. v. United States*, 165 Fed. Cl. 659, 666 (2023). Here, the Foundation bargained for the consideration it received and any dispute about the sufficiency of that consideration cannot place this case outside the reach of the Tucker Act.

Plaintiffs also recycle (Opp. 5) their argument that the Federal Grant and Cooperative Agreement Act of 1977, 31 U.S.C. § 6301 *et seq.*, distinguishes between procurement contracts and grants and cooperative agreements. But Plaintiffs cannot dispute that the Court of Federal Claims has

explained on multiple occasions that the definitions contained in that statute are not relevant to the Tucker Act's exclusive grant of jurisdiction because the two statutes had different concerns and serve distinct purposes. Defs.' Mem. at 16-18 (collecting authorities). Plaintiffs therefore retreat (Opp. 5) to the more modest position "that not every agreement is a contract." True enough, but that general proposition provides no guidance on whether the government here received sufficient consideration under the grant agreements to render those agreements contracts. As explained *supra* p.7, the government did.[4]

3. Plaintiffs next argue (Opp. 6-8) that their claims are not contractual even if the agreements are contracts. Neither prong of the relevant test—which assesses the source of Plaintiffs' rights and the remedy that Plaintiffs seek—supports such a conclusion. *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1107 (D.C. Cir. 2022); *see also* Defs.' Mem. at 18-20.

To start, Plaintiffs' asserted right to millions of dollars in taxpayer funds arises solely from the grant agreements and "in no sense ... exist[s] independently of" those contracts. *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). This prong can be resolved by a very simple question: what statute or regulation gives Plaintiffs the right to receive funding from the Foundation? The answer, of course, is that no such statute or regulation exists—Plaintiffs' right to receive payment from the Foundation, the Foundation's obligation (if any) to make such payment, and the Foundation's right to terminate the grant contracts are all derived exclusively from the grant contracts. Put simply, Plaintiffs could not bring claims seeking the reinstatement of grant contracts—much less

---

[4] Plaintiffs note (Opp. 5-6) that the grant agreements allow either party to terminate "upon written notice to the other" without having to pay compensation. But Plaintiffs cite no authority for the proposition that termination rights preclude an agreement from being a contract—indeed, many contracts contain termination rights, and the government has broad powers to terminate its contracts for convenience as a general matter. *See, e.g.*, *JKB Sols. & Servs., LLC v. United States*, 170 Fed. Cl. 241, 251 (2024) (addressing contract that authorized the government to "terminate performance of work under this contract in whole or, from time to time, in part if . . . determine[d] that a termination is in the Government's interest").

the funds issued pursuant to those contracts—had Plaintiffs not entered into grant contracts in the first place. The source of Plaintiffs' rights for their claims seeking reinstatement of the grant contracts is therefore contractual.

Plaintiffs again invoke *Bowen*, 487 U.S. at 908, for the proposition that Congress did not intend judicial review of "complex questions of federal-state interaction to be reviewed in a specialized forum such as the Court of Claims." Plaintiffs also theorize (Opp. 6) that Defendants' position "would allow the government to 'avoid injunctions against activities violative of a statutory duty simply by contracting not to engage in those activities.'" Both of these arguments beg the question, assuming that Plaintiffs possess some right to Foundation funds independent of their grant contracts. That is not the case: because Plaintiffs' rights to payment are a function of the grant contracts, no statutory analysis is necessary.

The relief that Plaintiffs seek is likewise contractual in nature. As there is no dispute that specific performance is a contractual remedy, *see Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017); *Spectrum Leasing Corp.*, 764 F.2d at 894-95, the dispositive question is whether Plaintiffs' claims requesting a "permanent injunction requiring Defendants to reinstate contracts and grants" and a "permanent injunction requiring all Defendants to pay any grant funds unlawfully withheld since February 28, 2025," Compl. Prayer for Relief, ¶¶ g, h, amount to requests for specific performance. The law on that question is clear: "To enjoin the breach of a contract is, in effect, to decree its specific performance." *Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*, 881 F.3d 1323, 1332 (Fed. Cir. 2018). So, too, is relief that directs Plaintiffs to perform under those contracts. *See Restatement Second of Contracts* § 357 cmt. A (explaining enforcement by specific performance is intended to have "the same effect that the performance due under a contract would have produced"); *Lary v. U.S. Postal Serv.*, 472 F.3d 1363, 1369 (Fed. Cir. 2006) (same). In other words, Plaintiffs seek relief that would require

Defendants to perform under the agreements by releasing the funds those agreements identify. That is the definition of specific performance.

Applying these settled principles to foreclose jurisdiction over Plaintiffs' claims seeking contractual relief is fully consistent with the D.C. Circuit's decision in *Crowley*, 38 F.4th 1099. The court in that case addressed an action brought by a Department of Defense contractor against the General Services Administration, which was not party to the contract. The court accordingly held that the plaintiff's rights "sound[] more in the nature of tort, *not* by virtue of its contract" because the defendant agency "owes no duty to [plaintiff] under the contract." *Id.* at 1108. Here, the sole duty that Plaintiffs seek to enforce against the Foundation—payment of funds under the grants—is derived exclusively from contracts. Moreover, the relief sought in *Crowley* bears little resemblance to the relief Plaintiffs seek here. The plaintiff in *Crowley* did not seek relief that would directly require the transfer of funds from the government to the plaintiff—that could be obtained only through a secondary lawsuit brought in the Court of Federal Claims. *Id.* at 1112 ("The fact that Crowley may obtain monetary relief from the United States in Claims Court if it succeeds in its suit against the GSA in district court 'is insufficient to deprive the district court of jurisdiction.'" (quoting *Smalls v. United States*, 471 F.3d 186, 190 (D.C. Cir. 2006))); *see also id.* at 1111 ("Crowley does not ask the district court to issue an order compelling the GSA to pay or award any monetary relief whatsoever."). Here, Plaintiffs take the opposite approach—an order from this Court requiring payment under grant agreements. Unlike in *Crowley*, Plaintiffs' shortcut to monetary relief would eliminate the Court of Federal Claims from the process entirely. The "essence" of Plaintiffs' claims is therefore contractual.

Plaintiffs acknowledge (Opp. 8) that they "request to pay funds that would have been disbursed." They nonetheless claim that this is merely "somewhat analogous to a request for specific performance." *Id.* (quoting *Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*, 763 F.2d 1441, 1449 (D.C. Cir. 1985)). As explained *supra* p. 9, it *is* a request for specific performance for purposes of

10

assessing the scope of the Tucker Act's exclusive grant of jurisdiction. *Maryland Department of Human Resources* does not compel a different conclusion because, unlike in that case, no statute mandates the funding of Plaintiffs' grant contracts. 763 F.2d at 1449. That distinction matters because the relief that would result in the transfer of funds to the plaintiff in *Maryland Department of Human Resources* was an injunction requiring the government to comply with its statutory obligations. Here, no statute requires the payment of funds to Plaintiffs, so Plaintiffs instead seek an order that would require the Foundation to comply with the obligations of the grant contracts by transferring money to Plaintiffs. The claim is thus contractual.

4. Finally, Plaintiffs emphasize (Opp. 8-9) that they seek to remedy harms "disconnected from the grant agreements." But the same was true of the *California* plaintiffs, and D.C. Circuit precedent is clear that a plaintiff may not evade the Tucker Act's jurisdictional bar merely be appending additional requests for relief atop fundamentally contractual claims. *See* Defs.' Mem. at 21-22. Plaintiffs' sole response is to invoke the separate injury of being denied the opportunity to compete for future federal grant funds. But as explained *infra* Part I.C, Plaintiffs lack standing to seek relief for that alleged harm.

Moreover, Plaintiffs do not dispute that there must be a waiver of sovereign immunity for each claim brought. *See* Defs.' Mem. at 22-23. Accordingly, even if certain of Plaintiffs' claims do not sound in contract, this Court must nonetheless dismiss for lack of jurisdiction those claims that do. That means, at a minimum, this Court must dismiss Plaintiffs' claims insofar as they seek "[a] preliminary and permanent injunction requiring Defendants to reinstate contracts and grants" and "[a] preliminary and permanent injunction requiring all Defendants to pay any grant funds unlawfully withheld." Compl., Prayer for Relief ¶¶ g, h.

**C. Plaintiffs lack Article III standing to obtain much of the relief sought.**

Plaintiffs lack Article III standing to seek relief that is not narrowly targeted at remedying Plaintiffs' injuries, including: (1) a declaration that Marocco lacked legal authority to cancel any

contracts and grants beyond those awarded to Plaintiffs; (2) a declaration that Marocco lacked legal authority to place Foundation employees on administrative leave; (3) a preliminary and permanent injunction ordering Defendants to cease alleged impoundment except as to Plaintiffs' grants; (4) a preliminary and permanent injunction prohibiting Defendants from continuing to keep Foundation employees on administrative leave and from implementing a reduction in force of Foundation employees; (5) a preliminary and permanent injunction requiring Defendants to reinstate contracts and grants other than those with Plaintiffs; and (6) a preliminary and permanent injunction requiring all Defendants to pay any grant funds unlawfully withheld since February 28, 2025, and to return any funds sent by grantees back to the federal government, except as to Plaintiffs' grants. Defs.' Mem. at 23-24. Plaintiffs' arguments to the contrary fail.

*First*, Plaintiffs assert (Opp. 13) that whether relief can run to nonparties is an argument concerning the scope of relief, not Article III standing. To be sure, Article III limitations on the scope of this Court's power arise on both the front-end of a case through an assessment of standing and at the back-end through when determining the scope of relief. But the analysis is essentially the same at either stage—whether the relief sought is narrowly "tailored to redress" Plaintiffs' "particularly injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). For this reason, the Supreme Court has squarely held that a plaintiff must establish Article III standing "for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). Because Plaintiffs seek relief directed to third parties, then, Plaintiffs must demonstrate Article III standing for that relief by showing it is necessary to remedy a harm to these Plaintiffs. They do not even attempt to do so in their Opposition.

*Salazar v. Buono*, 559 U.S. 700 (2010), is not to the contrary. In that case, the Supreme Court considered whether a plaintiff had standing to challenge a statute that would transfer land to a private party through application of a prior injunction to the land-transfer statute. The Supreme Court

concluded that "[t]his was a measure of relief that [plaintiff] had standing to seek" because "a party that obtains a judgment in its favor acquires a 'judicially cognizable' interest in ensuring compliance with that judgment." *Id.* at 712. That holding in no way grants Plaintiffs here Article III standing to seek relief for the protection of third parties.

*Second*, and separate from the third-party issue, Plaintiffs argue (Opp. 13-14) that broad relief directed at the future operations of the Foundation is necessary to remedy Plaintiffs' alleged lost ability to compete for future grants. But as Defendants explained, the Foundation is only funded through September 30, 2025, meaning it is speculative whether future grants will be issued. Defs.' Mem. at 25. Plaintiffs note that the Foundation has historically received appropriations from Congress, but the Foundation's budget has not historically received the scrutiny that it now faces. Indeed, the President's budget proposal for fiscal year 2026 eliminates the Foundation entirely. *See* Russel T. Vought Letter to Hon. Susan Collins (May 2, 2025) at 39-40, available at: https://www.whitehouse.gov/wp-content/uploads/2025/05/Fiscal-Year-2026-Discretionary-Budget-Request.pdf. Plaintiffs respond (Opp. 14) that they need not "disprove" Defendants' assertions about the likelihood of injury, but that flips the burden on standing, which is always Plaintiffs to bear. *Murthy*, 603 U.S. at 69 ("To obtain forward-looking relief, the plaintiffs must establish a substantial risk of future injury . . ."). And "Plaintiffs' burden to establish standing here is 'significantly more rigorous'" because Plaintiffs are asserting "future injuries." *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*, 656 F. Supp. 3d 137, 150 (D.D.C. 2023) (quoting *Chamber of Com. of U.S. v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011)). Merely pointing to the fact that the Foundation has historically been funded is not sufficient to carry that burden, particularly in light of the President's formal budget request that would eliminate the Foundation.[5]

---

[5] That Plaintiffs' alleged loss of their ability to compete for future grants is a future injury distinguishes this case from *Ipsen Biopharmaceuticals, Inc. v. Becerra*, 678 F. Supp. 3d 20 (D.D.C. 2023), *aff'd*, 108 F.4th 836 (D.C. Cir. 2024). There, the Plaintiffs argued that the FDA's alleged illegal conduct—"its refusal

## II.    Plaintiffs' separation-of-powers claim fails.

Plaintiffs' separation-of-powers claim fails for two independent reasons:  (1) because it is properly understood as a statutory claim, not a constitutional claim; and (2) because Defendants' actions are consistent with their statutory and constitutional obligations, unlike the relief sought by Plaintiffs.  Defs.' Mem. at 25-30.  Plaintiffs' responses to both arguments are deficient.

1.    Plaintiffs first contend (Opp. 15-16) that their claim is constitutional because they are challenging "Defendants' decisions to fundamentally dismantle an agency created by Congress, impound almost all of its appropriated funding, and effectively cease its operations," which Plaintiffs claim "trample upon Congress's power to make law [] by creating the agency and specifying its functions."  But that is precisely why this is, at its core, a statutory claim:  Defendants' actions only "trample upon Congress's power to make law" if Defendants actions in fact violate the laws that Congress has made.  That analysis can only be statutory, not constitutional.  *Dalton v. Specter*, 511 U.S. 462, 473-74 (1994) ("claims simply alleging that the President has exceeded his statutory authority are not 'constitutional'").

The now-administratively-stayed decision in *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025), illustrates the point.  There, too, Plaintiffs alleged that reductions to the footprint of an agency gave rise to "impoundment, Presentment Clause, Appropriations Clause, Spending Clause, Take Care Clause, Separation-of-Powers, and *ultra vires* claims."  *Id.* at *5; *see also id.* at *3 ("And in their stay briefing, plaintiffs expressly frame their claims as challenging the 'wholesale shuttering of VOA' and seeking to undo 'broad government actions' to 'dismantl[e]' an entire federal agency.'").  The panel explained that "these constitutional claims simply flow from allegations that the Executive Branch has failed to abide by governing congressional statutes."  *Id.* at *5. Critically, the

___

to regulate" a pharmaceutical product—caused an already-suffered "competitive injury."  *Id.* at 31.  Accordingly, the plaintiff in that case did not need to clear the higher bar for future injury that Plaintiffs must clear here.

14

dissent did not voice any disagreement on that score. Here, too, Plaintiffs' separation-of-powers claim flows from their allegations that the Executive Branch did not comply with statutory requirements. That means the claim is statutory, not constitutional.

2. On the substance of their separation-of-powers claim, Plaintiffs insist (Opp. 16) that they have "established" that "Defendants actions to cancel all but one of the Foundation's grants, fire all but one of its employees, usurp the powers of its Senate-confirmed Board, fire its President, and all but cease its operations" violate the Constitution. Plaintiffs fail to show that any of those actions violates any statute, much less the Constitution.

Starting with the decision to cancel all but one of the Foundation's grants, Plaintiffs do not (and cannot) dispute that the Foundation possessed the *contractual* right to cancel every one of those grants. The question is then whether any statutory or constitutional provision prohibited the Foundation from doing so. But Plaintiffs concede as "true" (Opp. 16) that "no source of law 'requires the Foundation to continue to fund Plaintiffs,'" or, indeed, any grantee, through "because Plaintiffs are not funded through direct congressional appropriations." That concession gives up the game. Plaintiffs nonetheless claim (Opp. 16) that this is beside the point because the grants were not "*lawfully* terminat[ed]." But that statement presumes that either the Constitution of some statute provides a source of law for assessing the legality of Plaintiffs' grant terminations. No appropriations statute does so. And, of course, no provision in the Constitution requires the Foundation to fund Plaintiffs' grants. Defendants' termination of Plaintiffs' grants therefore does not violate either the Constitution or any relevant statute. The same analysis applies to the President's decision to terminate all but one of the Foundation's employees. And there is no dispute that the President possesses the power to remove the Senate-confirmed Board and President of the Foundation if he wished to do so.

For these reasons, Plaintiffs' continued reliance on *In re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013), is misplaced. Plaintiffs claim (Opp. 17) that case "stands for the proposition that" the President

may not "refuse 'to perform a statutorily mandated activity." But Plaintiffs cannot identify any such statutorily mandated activity—as Defendants have explained, no statute requires that the Foundation fund any particular grants or even any grants at all. Defs.' Mem. at 19-20. Nor have Plaintiffs identified any statute that requires the Foundation to employ some specified number of people.

The only threat to the separation of powers here is therefore the relief that Plaintiffs seek. Defs.' Mem. at 28-30. Plaintiffs respond (Opp. 17) that Congress, too, exercises power over foreign affairs. While it is true that Congress has a role to play in that arena, the Supreme Court has long recognized that "in foreign affairs the President has a degree of independent authority to act." *Am. Ins. Ass'n v. Garamendi,* 539 U.S. 396, 414 (2003). The President exercised that authority when determining that the Foundation's grants were contrary to the United States' interests and directing that they be terminated to the extent authorized by law.

## III.    Plaintiffs' *ultra vires* claims fail.

### A.    Plaintiffs fail to state an *ultra vires* claim alleging impoundment.

1. At the threshold, Plaintiffs do not (and cannot) dispute that unequivocal D.C. Circuit law precludes an *ultra vires* claim where the statute that defendants allegedly violated provides an "alternative procedure for review of the statutory claim." *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019) (quoting *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009)); Defs.' Mem. at 30. Nor do Plaintiffs dispute that the Impoundment Control Act provides such a procedure for review through enforcement by the Comptroller General. Defs.' Mem. at 30-31. No further analysis is necessary: Plaintiffs fail to satisfy the D.C. Circuit's threshold requirements to bring an *ultra vires* claim for violation of the statutes identified, and that claim must be dismissed.[6]

---

[6] Plaintiffs' authorities are not to the contrary. *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, Nos. 25-cv-00400 & 25-cv-00402 (AHA), --- F. Supp. 3d ---, 2025 WL 752378, at *18 n.18 (D.D.C. Mar. 10, 2025), *appeal filed*, No. 25-5097 (D.C. Cir. Apr. 2, 2025), did not address this limitation on *ultra vires* claims. And *New York v. Trump*, 25-cv-00039, --- F. Supp. 3d ---, 2025 WL 715621, at *9 n.13 (D.R.I. Mar. 6, 2025), addressed whether the Impoundment Control Act could be "enforceable through an

Such an outcome would be fully consistent with the D.C. Circuit's decision in *In re Aiken County*, 725 F.3d 255. The plaintiff in that case sought a writ of mandamus, which turns in part on whether there is another "adequate remedy available *to plaintiff*." *In re Nat'l Nurses United*, 47 F.4th 746, 752 n.4 (D.C. Cir. 2022) (quoting *Muthana v. Pompeo*, 985 F.3d 893, 910 (D.C. Cir. 2021)) (emphasis added). That is a different question than the one this Court must ask to assess the availability of an *ultra vires* claim, which turns broadly on whether there is an alternative path for any review of the alleged statutory violation, not merely review through an action brought by the plaintiff. In any event, the statute at issue in *Aiken County*, which required that the Nuclear Regulatory Commission act on the Department of Energy's license application, did not provide an alternative mechanism for judicial review. So the availability of a writ of mandamus in that case has no bearing on the availability of an *ultra vires* claim here.

2. Plaintiffs' *ultra vires* claim based on alleged impoundment also fails on the merits because they have not established the violation of a "clear and mandatory" "specific prohibition." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d. 1244, 1263 (D.C. Cir. 2020) (quoting *DCH Reg'l Med. Ctr.*, 925 F.3d at 509); Defs.' Mem. at 31-32. The prohibition that Plaintiffs identify is the funding for the Foundation that is "to remain available until September 30, 2025." Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, Div. F, tit. III, 138 Stat. 460, 746. But that statute does not require the Foundation to fund any grants or employ any number of people, so the challenged actions do not violate that statute. *See* Defs.' Mem. at 19.

**B. Plaintiffs fail to state an *ultra vires* claim regarding Marocco's appointment as an acting member of the Foundation Board.**

Plaintiffs repeat their fundamental error in asserting that the President lacks authority to designate acting members of the Foundation's board. As Defendants explained, Article II has long

---

APA suit." That is a different question than whether the Impoundment Control Act can be enforced through an *ultra vires* claim. Plaintiffs' APA claims here are barred as explained *infra* Part IV.

been understood by Presidents of both parties to authorize the designation of acting officials to supervise executive agencies pending the Senate's confirmation of the President's nominees. The authority flows from the President's core Article II responsibilities to take care that the laws be executed and to maintain accountability for officials acting on the President's behalf, and the President properly exercised that authority here to designate Pete Marocco as an acting member and chairman of the Board. Defs.' Mem. at 32-37.

Plaintiffs respond that the law-of-the-case doctrine means this issue has been resolved. That doctrine is inapplicable here for three independent reasons. *First*, that order was issued in a different case brought by different plaintiffs. Plaintiffs cite no authority (and Defendants are aware of none) in which the law-of-the-case doctrine was applied to a different case. *See Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999) ("The law-of-the-case doctrine rests on a simple premise: 'the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*.'") (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc)). That certain parties overlap is therefore irrelevant—this is simply not the same case.

*Second*, the law-of-the-case doctrine applies only where a legal decision made at one stage of litigation is "unchallenged in a subsequent appeal when the opportunity to do so existed." *Id.* (quoting *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C. Cir. 1987)). Defendants promptly appealed in *Aviel, see Gor v. Aviel*, No. 25-5105, (D.C. Cir. Apr. 7, 2025), and that appeal remains pending.

*Third*, a ruling at the preliminary-injunction stage of proceedings is not law of the case. *See Berrigan v. Sigler*, 499 F.2d 514, 518 (D.C. Cir. 1974). While there are limited exceptions to that rule, those exceptions do not apply where the original decision was made "on briefing and argument abbreviated or eliminated by time considerations." *Sherley v. Sebelius*, 689 F.3d 776, 782 (D.C. Cir.

2012).  That was the case in the accelerated briefing posture of *Aviel*, and Defendants' arguments have now been further developed.  Those arguments warrant full consideration here.

In any event, the "law-of-the-case may be revisited . . . if there is an intervening change in the law or if the previous decision was 'clearly erroneous and would work a manifest injustice.'"  *Kimberlin*, 199 F.3d at 500 (quoting *LaShawn A. v. Barry*, 87 F.3d at 1393).  That standard is met here:  for the reasons Defendants have provided, Defs.' Mem. at 32-37, the conclusion that the President lacked Article II authority to appoint an acting board member was incorrect and effected significant harm on the President's ability to manage the Executive Branch.

On the substance of the *ultra vires* appointment claim, Plaintiffs argue (Opp. 22-23) that Defendants misread *Williams v. Phillips*, 482 F.2d 669, 670 (D.C. Cir. 1973), because the court there "assum[ed], without deciding, that [it] on the merits might disagree with the District Court's approach and might conclude that [the] appointment was not invalid *ab initio*."  Plaintiffs ignore the context of the D.C. Circuit's decision.  The district court in that case had adopted, like this Court in *Aviel*, the view that the President lacks the power to designate acting officials absent an affirmative act of Congress.  *See Williams v. Phillips*, 360 F. Supp. 1363, 1371 (D.D.C. 1973) ("The Court holds that in the absence of such legislation or legislation vesting a temporary power of appointment in the President, the constitutional process of nomination and confirmation must be followed.").  The D.C. Circuit refused to affirm that understanding, recognizing that "[i]t could be argued that the intersection of the President's constitutional obligation to 'take care that the laws be faithfully executed' and his obligation to appoint the director . . . 'with the Advice and Consent of the Senate' provides the President an implied power, in the absence of limiting legislation . . . to appoint an acting director for a reasonable period of time before submitting the nomination of a new director to the Senate."  482 F.2d at 670.  Read in context, then, the D.C. Circuit's decision in *Williams* undermines Plaintiffs' arguments here.

Finally, Plaintiffs argue (Opp. 23 n.12) that the current vacancies were not "occasioned by the Board's failure to adequately comply with the President's directives."  But that is what the Aviel declaration states in Plaintiffs' own words—"that the Board members were fired after DOGE insisted that they rubber-stamp a plan to gut the agency" pursuant to the President's Executive Order directing just that.  *Id.*  This emphasizes why the President's Article II power requires that he appoint acting officials:  absent that ability, the President could not ensure the Foundation's exercise of executive power accords with the President's instructions as he constitutionally must.  *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020) (explaining the Constitution vests the "'executive Power'—all of it"— is 'vested in a President alone" (quoting U.S. Const. art. II, § 1, cl. 1)).

## IV.  Plaintiffs' APA claims fail.

Plaintiffs' APA claims fail for three independent reasons:  (1) the Tucker Act provides an alternative remedy foreclosing APA review; (2) the actions challenged by Plaintiffs' APA claims—the termination of grants—is committed to agency discretion by law; and (3) even if Plaintiffs' APA claims could clear those threshold hurdles, Defendants' actions are consistent with their obligations under that statute. Defs.' Mem. at 37-40.  Plaintiffs' responses on all three issues miss the mark.

1.  As the Supreme Court made clear in *California*, APA review is not available for grant terminations.  Defs.' Mem. at 37-38.  Indeed, elsewhere in their opposition Plaintiffs' first line of defense to distinguish *California* was that (Opp. 9) Plaintiffs here "have asserted non-APA claims," unlike the *California* plaintiffs.  Nor may Plaintiffs argue that their APA claims challenge more than grant terminations.  They have already stated otherwise, explaining in a Joint Status Report that "Plaintiffs' arbitrary-and-capricious claim, the only claim that could require consideration of an administrative record, is limited to Defendants' decision to cancel all of the Foundation's contracts and grants."  ECF No. 22 at 3.  Accordingly, and even if this Court allows Plaintiffs non-APA claims to proceed, *California* requires dismissal of the APA claims.

2.  Independently, APA review is not available because the termination of grants is committed to agency discretion by law.  Defs.' Mem. at 38-39.  Plaintiffs even acknowledge (Opp. 23-24) that "an agency typically has broad, even unreviewable, discretion to determine how to allocate a lump-sum appropriation."  That concession is dispositive:  if the Foundation determines that its lump-sum appropriation—which does not require funds be used for any particular purpose—should be used to pay severance to terminated employees, that is the agency's determination to make.  Because Plaintiffs do not (and cannot) identify any statute requiring the Foundation to use its funds for any particular purposes, Plaintiffs' APA claims therefore fail because they challenge actions committed to agency discretion by law.

3.  In any event, Defendants' decision to terminate grants complies with the APA.  Defendants concluded that the terminated grants were inconsistent with Executive Branch priorities and were not required under statute, which is all the APA requires.  Defs.' Mem. at 39-40.  Plaintiffs respond (Opp. 24) that compliance with the President's directive is not reasoned decisionmaking.  But as explained *supra* p. 16, the President has broad discretion to act in the field of foreign affairs.  *Garamendi*, 539 U.S. at 414; *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 320 (1936).  Here, the President determined that continued funding of foreign grantees through the Inter-American Foundation is contrary to the nation's interests, and directed the Foundation to exercise its contractual rights to terminate the Agreements.  The agency's compliance with that directive is neither arbitrary nor capricious.  *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.* Co., 463 U.S. 29, 43 (1983).  No matter how vehemently Plaintiffs disagree with the President's policy determinations, the APA does not allow this Court to substitute Plaintiffs' policy preferences for those of the President.  *See Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 374 F.3d 1251, 1263 (D.C. Cir. 2004) (explaining that, where plaintiff's "arbitrary-and-capricious challenge boils down to a policy disagreement," courts "have no basis for substituting [plaintiffs'] views for the agency's").

21

Plaintiffs next complain (Opp. 25) about the absence of an administrative record. But that just illustrates why the Court should stay this action pending issuance of any alternative disposition in *Aviel* for the reasons explained *supra* Part I.A. Defendants do not have practical access to any Foundation materials, including the materials that were considered when the grants were terminated, because Defendants are precluded from exercising their authority as an acting member of the Foundation's board or as President of the Foundation. Without access to those materials, Defendants cannot obtain a certified administrative record. In any event, Plaintiffs identify no issue for which additional record materials are relevant: already before this Court are the relevant grants (which clearly establish the Foundation's right to terminate those grants at will), the President's Executive Order directing the Foundation to terminate all grants to the extent allowed by law, and the termination notices themselves. *See* Defs.' Mem. 4 n.1. No more is required. And to the extent that the Court views the existing record as inadequate, it can remand for further explanation if this case is not otherwise moot, as the APA requires. *See* 5 U.S.C. § 706.

Plaintiffs finally argue (Opp. 25-26) that "Defendant Treasury has a mandatory, nondiscretionary duty under the relevant appropriations statutes to make available and disburse the Foundation's funds." There is no dispute that, if the Foundation is required to disburse appropriated funds, the Department of Treasury will provide those appropriated funds as a ministerial obligation, assuming all other requirements for payment are satisfied (*i.e.*, that the grantees do not owe a debt that would be covered by the Treasury Offset Program). Accordingly, this claim rises and falls with Plaintiffs other APA claims, and therefore falls for the reasons explained *supra*.

## V.    Any relief should be limited.

### A.    Plaintiffs are not entitled to a permanent injunction.

Plaintiffs may not obtain a permanent injunction because they fail to satisfy the traditional equitable factors that are required for all injunctive relief: "(1) that [they have] suffered an irreparable

injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff[s] and defendant[s], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)); Defs.' Mem. at 40-41.  Before addressing those factors, Plaintiffs suggest (Opp. 26-27) that the traditional equitable factors are somehow inapplicable when a Plaintiff asserts a constitutional claim.  But even assuming that Plaintiffs have asserted such a claim (and they have not, *supra* Part II), D.C. Circuit precedent is clear that a Plaintiff must still satisfy every prong of the permanent injunction analysis.  *See Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 694 (D.C. Cir. 2015) (holding in the context of a constitutional challenge to Title X of the Dodd-Frank Act that "[f]ailing to satisfy any factor is grounds for denying relief"); *Sweis v. U.S. Foreign Claims Settlement Comm'n*, 950 F. Supp. 2d 44, 48 (D.D.C. 2013) ("[M]erely raising a constitutional claim is insufficient to warrant a presumption of irreparable injury.").  For the reasons explained below, Plaintiffs fail to make the required showings.

    1.  To start, Plaintiffs cannot obtain a permanent injunction because Plaintiffs' injury in the form of withheld grant payments can be remedied at law through an action brought in the Court of Federal Claims.  Defs.' Mot. at 41-42.  Plaintiffs do not even attempt to defend their assertion that the loss of grant funding amounts to irreparable harm, instead falling back (Opp. 27) on the arguments that courts at final judgment do not require irreparable harm and that a reduction in the Foundation's footprint is itself irreparable harm.  Neither argument is correct.

    On the law, Plaintiffs are simply wrong that the irreparable harm requirement ceases to exist at the permanent injunction phase in proceedings.  Courts in this district have repeatedly made clear, including in the context of permanent injunctions sought to address alleged constitutional violations, that "[i]t is a 'basic doctrine of equity jurisprudence that courts of equity should not act . . . when the

moving party [1] has an adequate remedy at law and [2] will not suffer irreparable injury if denied injunctive relief.'" *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 979 F. Supp. 2d 104, 112 (D.D.C. 2013) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)), *aff'd*, 785 F.3d 684 (D.C. Cir. 2015); *see also McManus v. D.C.*, 530 F. Supp. 2d 46, 80 (D.D.C. 2007) (to obtain "a permanent injunction," plaintiffs "must demonstrate . . . an irreparable injury[] that remedies available at law, such as monetary damages, are inadequate to compensate" (quoting *eBay Inc.*, 547 U.S. at 391)).

Nor may Plaintiffs claim harm to the Foundation as irreparable injury sufficient to obtain a permanent injunction. "Abstract harm" to third parties "does not satisfy the irreparable harm requirement in the context of emergency injunctive relief, which must instead be connected specifically to the parties before the Court." *Church v. Biden*, 573 F. Supp. 3d 118, 146 (D.D.C. 2021); *see also Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 326 (D.D.C. 2018).

2. The balance of the equities and public interest also favor denying injunctive relief. Defs.' Mem. at 42-43. While Plaintiffs "can recover any wrongfully withheld funds through suit in an appropriate forum," *California*, 145 S. Ct. at 969, any funds incorrectly distributed now will be lost for the taxpayer forever. A permanent injunction would also undermine the President's decision about how to best allocate Executive Branch resources. Defs.' Mem. at 43.

**B. Relief must be limited to address Plaintiffs' injuries.**

Plaintiffs may not obtain relief that is intended to benefit third parties. Defs.' Mem. at 43-44. It is well-established that both Article III and principles of equity require a federal court to tailor any remedies "to redress the plaintiff's particular injury." *Gill*, 585 U.S. at 73; *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (equitable relief must "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiff"); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010) ("If a less drastic remedy ... [is] sufficient to redress [the] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted."); *Garrido v. Dudek*, 731 F.3d 1152,

24

1159 (11th Cir. 2013) ("It is axiomatic that '[i]njunctive relief should be limited in scope to the extent necessary to protect the interests of the parties.'" (quoting *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003)). Indeed, the Supreme Court recently underscored that "foundational rule" by staying a district court's injunction to the extent it applied to nonparties. *Labrador v. Poe*, 144 S. Ct. 921, 927 (2024) (Gorsuch, J., concurring in the grant of stay); *see id.* at 931, 933 n.4 (Kavanaugh, J., concurring in the grant of stay)

Plaintiffs respond (Opp. 28) that "[a]ny order ameliorating the unlawful dissolution of the agency necessarily must extend beyond the nine Plaintiff grantees." That reasoning is the very problem: this Court possesses jurisdiction only to resolve Plaintiffs' injuries, not freewheeling authority to superintend implementation of an Executive Order. Plaintiffs have not shown that the cancellation of other recipients' grants causes these Plaintiffs any harm. Relief directed at other recipients is therefore beyond the scope of this Court's Article III jurisdiction and equitable powers.

## CONCLUSION

For these reasons, the Court should stay resolution of the pending motions until the relief afforded in *Aviel* is disturbed. If that relief becomes final, this Court should dismiss the instant action as moot. If the relief in *Aviel* is disturbed, this Court should deny Plaintiffs' motion for summary judgment, dismiss this action for lack of jurisdiction or, in the alternative, grant Defendants' cross-motion for summary judgment. In all events, this Court should limit relief to that necessary to remedy Plaintiffs' proven injuries, which means no more than an order reinstating Plaintiffs' terminated grant agreements.

Dated: May 16, 2025                    Respectfully submitted,


                                       YAAKOV M. ROTH
                                       *Acting Assistant Attorney General*

                                       JOSEPH E. BORSON
                                       *Assistant Branch Director*

                                       /s/ *Alexander W. Resar*
                                       ALEXANDER W. RESAR
                                       *Trial Attorney*
                                       U.S. Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L Street, NW
                                       Washington, DC 20530
                                       Telephone: (202) 616-8188
                                       Email: alexander.w.resar@usdoj.gov

                                       *Counsel for Defendants*