# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 25-5105**  **September Term, 2024**

1:25-cv-00778-LLA

**Filed On:** June 5, 2025

Sara Aviel, in her personal capacity and in
her official capacity as President of the
Inter-American Foundation,

      Appellee

      v.

Sergio Gor, in his official capacity as Director
of the White House Presidential Personnel
Office, et al.,

      Appellants

**BEFORE:** Pillard\*, Katsas\*, and Rao\*\*, Circuit Judges

# O R D E R

Upon consideration of the emergency motion for a stay pending appeal, the opposition thereto, the reply, and the Rule 28(j) letters, it is

**ORDERED** that the motion be denied. Appellants have not satisfied the stringent requirements for a stay pending appeal. See <u>Nken v. Holder</u>, 556 U.S. 418, 434 (2009); <u>D.C. Circuit Handbook of Practice and Internal Procedures</u> 33 (2024).

### Per Curiam

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:    /s/
      Selena R. Gancasz
      Deputy Clerk

---

\* A statement by Circuit Judge Katsas, joined by Circuit Judge Pillard, concurring in this order, is attached.

\*\* A statement by Circuit Judge Rao, dissenting from this order, is attached.

KATSAS, *Circuit Judge*, joined by PILLARD, *Circuit Judge*, concurring: This case involves a dispute over whether plaintiff Sara Aviel is presently the Chief Executive Officer of the Inter-American Foundation (IAF), a government corporation that issues grants to further development in the Caribbean and Latin America. *See* 22 U.S.C. § 290f. The IAF is run by a Board of Directors appointed by the President with the advice and consent of the Senate. *Id.* § 290f(g). In turn, the Board appoints and supervises the Foundation's CEO. *Id.* § 290f(*l*).

In February 2025, the President removed all the incumbent IAF Board members, as permitted by statute. *Aviel v. Gor*, No. 25-cv-778, 2025 WL 1009035, at *3, *6 (D.D.C. Apr. 4, 2025). The President then purported to unilaterally designate Pete Marocco as an acting member of the Board. *Id.* at *4. Both the President and Marocco then purported to remove Aviel from her position as the Foundation's CEO. *Id.*

Aviel sued various government officials, including the President, and sought injunctive relief to continue serving as CEO. The district court granted a preliminary injunction requiring the defendants to recognize her as still holding that office. *Aviel*, 2025 WL 1009035, at *13; Order, *id.*, No. 25-cv-778, ECF Doc. 23. The government appealed and sought an emergency stay.

We deny the stay because the government is unlikely to succeed on the merits of its contentions that Aviel (1) was permissibly removed from her position as CEO and (2) is not entitled to reinstatement as a remedy. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). The first point follows from the law regarding presidential removals and appointments, while the second reflects a recent stay decision by our *en banc* Court.

I

It is unlikely that either the President or Marocco permissibly removed Aviel.

2

To begin, the President's putative removal was likely invalid. The governing statute authorizes the IAF Board of Directors—not the President—to appoint the CEO, and it is silent regarding the question of removal. 22 U.S.C. § 290f(*l*). That means the Board—not the President—has the power to remove Aviel. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 493, 509 (2010). As the Supreme Court explained in *Free Enterprise Fund*, "Congress may vest in heads of departments" the appointment of inferior officers, and, "[i]f Congress does so, it is ordinarily the department head, rather than the President, who enjoys the power of removal." *Id.* at 493. Likewise, in *In re Hennen*, 38 U.S. 230 (1839), the Court noted that if Congress vests a department head with the power to appoint and remove an inferior officer, "the President has certainly no power to remove" the inferior officer directly. *Id.* at 260.

Marocco independently purported to remove Aviel, but he likely lacked authority to act as an IAF Board member. The IAF Board reports to nobody except the President, so its members are principal officers of the United States. *See*, *e.g.*, *Edmond v. United States*, 520 U.S. 651, 662–63 (1997). Yet Marocco was not appointed with the advice and consent of the Senate, as required by the Appointments Clause of the Constitution, U.S. Const. Art. II, § 2, cl. 2, and by the Foundation's organic statute, 22 U.S.C. § 290f(*l*). And in the absence of any Senate recess, the President could not unilaterally appoint him to fill a vacancy pursuant to the Recess Appointments Clause, U.S. Const. Art. II, § 2, cl. 3. The parties vigorously dispute whether the Federal Vacancies Reform Act separately prohibits the President from designating individuals to serve as acting members of multi-member boards like that of the Foundation. But regardless, the FVRA's temporary-designation provisions do not apply to such boards. *See* 5 U.S.C. § 3349c(1). And in any event, Marocco would not have qualified for such a designation. *See id.* § 3345(a). So the

3

government does not contend that the FVRA affirmatively authorized the appointment or designation at issue.

Instead, the government asserts that the President has inherent Article II authority to designate acting principal officers to ensure that he may faithfully execute federal law, as required by the Take Care Clause, U.S. Const. Art II, § 3. That contention is unlikely to succeed. The Appointments Clause prohibits the appointment of principal officers without the advice and consent of the Senate. Such consent "is a critical structural safeguard" against presidential overreach—a feature of our constitutional system, not a bug. *NLRB v. SW General, Inc.*, 580 U.S. 288, 293 (2017) (cleaned up). Furthermore, the Constitution provides only one express exception to the Senate-confirmation requirement for principal officers, which applies only when the Senate is in recess. And the only statutory scheme for delaying Senate confirmation does not support the putative designation at issue. Given these specific checks and balances regarding appointments, it is unlikely that the Take Care Clause gives the President unfettered discretion to designate acting principal officers with neither Senate confirmation nor a Senate recess nor even statutory authorization through the FVRA.[1]

II

There are further questions whether the government is likely to succeed on its arguments about remedies. A serious and important question would have arisen had the district court purported to enjoin the President directly. *See Mississippi v.*

---

[1] We have suggested that the President might possess an inherent Article II power to designate someone to temporarily exercise the powers of a vacant office in order to abate an emergency. *See Williams v. Phillips*, 482 F.2d 669, 670 n.1 (D.C. Cir. 1973) (per curiam). The government does not argue that any such emergency exists here, so we do not consider this theory.

4

*Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867). But the preliminary injunction—which runs against the "Defendants" generally—is best construed not to reach the President. In *Franklin v. Massachusetts*, 505 U.S. 788 (1992), the Supreme Court held that the Administrative Procedure Act, which by its terms regulates "each authority of the Government of the United States," does not speak clearly enough to include the President. *See id.* at 800–01. If that reference was insufficiently clear to sweep in the President, then so too was the district court's generic reference to the "Defendants," even though one of them is the President.

Beyond that point, judges of our Court have expressed concerns with other aspects of the kind of injunctive relief ordered here, including whether or when reinstatement is an available remedy for unlawfully removed officials. *See, e.g.*, *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *2–7 (D.C. Cir. Apr. 7, 2025) (Rao, J., dissenting); *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *14 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting). Nevertheless, in considering this stay motion, it seems appropriate to defer to the views expressed by our *en banc* Court in denying a stay pending appeal in *Harris*, which found the government unlikely to succeed in its contention that reinstatement is rarely if ever an available remedy for unlawfully removed officials. *See* 2025 WL 1021435, at *2 (per curiam). This does not suggest that unpublished stay decisions rendered on our emergency docket—by the *en banc* Court or otherwise—would bind future merits panels. But an *en banc* stay decision can inform a later panel stay decision when both present the same question.[2]

---

[2] Although the Supreme Court issued a stay in *Harris* and a companion case, its merits ruling rested on the proposition that the removals at issue in those cases were likely lawful. *See Trump v.*

*Wilcox*, No. 24A966, slip op. at 1–2 (U.S. May 22, 2025). The Court did not separately address the question whether reinstatement would have been an appropriate remedy if the removals at issue were unlawful. Accordingly, our *en banc* order is the last word on that question until either the Supreme Court or a merits panel of our Court more definitively resolves the remedies issues.

Rao, *Circuit Judge*, dissenting: The district court enjoined the President of the United States and ordered the reinstatement of an officer removed by the President. This court should stay the injunction because it intrudes on the President's Article II removal power. The removed officer is not "independent" and enjoys no for-cause removal protections, so this case does not implicate the ongoing dispute over whether *Humphrey's Executor* remains good law. A stay is also necessary because the injunction exceeds the equitable power of the Article III courts. Courts cannot enjoin the President. *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 500–01 (1867). And the injunction directs actions that impermissibly impinge on the President's control and supervision of the Executive Branch. *See Trump v. Wilcox*, No. 24A966, 2025 WL 1464804, at *1 (U.S. May 22, 2025). Because I would stay the district court's injunction in full, I respectfully dissent.

I.

The Inter-American Foundation ("IAF") is a government corporation that distributes grants for social development in Latin America and the Caribbean. 22 U.S.C. § 290f(b). It is managed by a board of directors whose nine members are appointed by the President with the advice and consent of the Senate. *Id.* § 290f(g). The Board appointed Sara Aviel as IAF president and CEO. As part of the broader effort to streamline the federal government, President Trump removed the IAF Board members and then removed Aviel. Two days later, the President named Pete Marocco as acting chairman of the IAF Board. Marocco also purported to remove Aviel.

Aviel sued the President and numerous other officials. The district court issued a preliminary injunction against named "Defendants," including "President Trump, Mr. Marocco, and other government officials and entities." *Aviel v. Gor*, No. 25-778, 2025 WL 1009035, at *1 (D.D.C. Apr. 4, 2025). As relevant here, the injunction orders Aviel reinstated as CEO,

2

removes Marocco from the IAF Board, prohibits the President from appointing any other acting IAF Board members, and declares Marocco's actions "void ab initio." The government seeks a stay pending appeal.

II.

I would grant a stay because the government is likely to succeed on the merits of its claim, and the balance of harms favors the government. *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

A.

The government is likely to succeed on its challenge to the injunction for two independent reasons. First, the President's removal of Aviel was lawful. Second, the remedy issued by the district court is inconsistent with equitable remedies traditionally available for the allegedly unlawful removal of an executive branch officer.

1.

The district court concluded the President lacked authority to remove Aviel, an inferior officer, because she was appointed by the IAF Board and therefore could be removed only by the Board. Nothing in the governing statute or the Constitution, however, limits the President's power to remove this executive branch officer.

The Constitution vests all the executive power in the President. U.S. Const. art. II, § 1. As a consequence of this vesting, the President "may remove without cause executive officers who exercise that power on his behalf, subject to narrow exceptions recognized by [Supreme Court] precedents." *Wilcox*, 2025 WL 1464804, at *1. The removal

3

power is essential to the President's oversight and control of officers who exercise executive power on his behalf. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483 (2010) ("Since 1789, the Constitution has been understood to empower the President to keep … officers accountable—by removing them from office, if necessary."). "Article II 'grants to the President' the 'general administrative control of those executing the laws, including the power of appointment *and removal* of executive officers.'" *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197–98 (2020) (quoting *Myers v. United States*, 272 U.S. 52, 163–64 (1926)). Under these well-established principles, the President's removal of Aviel was lawful.

The district court (and my colleagues) conclude that the President could not remove Aviel because "the Board holds hiring and firing power over the IAF's president and CEO." *Aviel*, 2025 WL 1009035, at *7; *see also* Katsas, J., concurring, at 2. I agree that the Board has authority to remove Aviel as an incident of its appointment power.[1] 22 U.S.C. § 290f(l)(1). *See Kalaris v. Donovan*, 697 F.2d 376, 401 (D.C. Cir. 1983)

---

[1] The government also argues that Aviel was properly terminated by Marocco in his capacity as an acting IAF Board member. I agree with my colleagues that this argument is unlikely to succeed because the text and structure of the Constitution strongly suggest the President has no inherent authority to appoint officers of the United States, like IAF Board members, outside the strictures of the Appointments Clause. U.S. Const. art. II, § 2; *see NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 946 (2017) (Thomas, J., concurring) ("[T]he Appointments Clause forbids the President to appoint principal officers without the advice and consent of the Senate."). And the Federal Vacancies Reform Act does not apply to the IAF. 5 U.S.C. §§ 3349c(1)(B), 3345. If Marocco was not properly appointed as an acting IAF Board member, he lacked the authority to remove Aviel.

Case 1:25-cv-00857-LLA   Document 31-1   Filed 06/06/25   Page 10 of 18

4

("[T]he power of removal is incident to the power of appointment."); *Seila Law*, 140 S. Ct. at 2197–98.

Nothing in the IAF statute, our caselaw, or the Constitution, however, renders the Board's removal authority exclusive or forecloses the President's ability to remove this officer. For officers who "wield significant executive power," "the President's removal power is the rule, not the exception."[2] *Seila Law*, 140 S. Ct. at 2211, 2190. Congress did not limit who may remove the CEO or on what terms. The CEO therefore remains removable at will by either the Board or the President. The President may direct and control the management of the IAF and remove officers who fail to follow his directives.

That is precisely what occurred here. The President removed all remaining IAF Board members for refusing to follow his directives to substantially downsize the IAF. Aviel remained in charge of the IAF, executing the laws without the possibility of Board supervision or removal. *See* IAF Bylaws, art. III, § 2 (providing the CEO "shall exercise all powers and authorities of the Foundation except as the Board may otherwise provide"). The President's representatives asked

---

[2] The "sound and necessary rule, to consider the power of removal as incident to the power of appointment," may always be qualified by a "constitutional provision, or statutory regulation." *In re Hennen*, 38 U.S. (13 Pet.) 230, 259 (1839). The constitutional provision here is Article II, which provides for presidential removal of executive branch officers, particularly when no statute provides to the contrary. It is true that when reviewing a challenge to the removal of a federal district court clerk, i.e., a judicial officer, the Supreme Court stated in obiter dicta that "the President has certainly no power to remove" an inferior officer. *See id.* at 260. But that statement has never been repeated as a holding of the Supreme Court and runs contrary to recent decisions reaffirming the breadth of the President's constitutional removal authority.

5

Aviel to confirm she would implement the President's agenda in the absence of a Board. When she refused, the President fired her.

The President rarely has cause to turn his attention to the removal of an inferior officer because such officers are directly controlled by principal officers in the chain of command. But at a minimum, when that chain of command is broken, as it was here, "[t]he Constitution requires that such officials remain dependent on the President" and subject to his control. *Seila Law*, 140 S. Ct. at 2211; *see Myers*, 272 U.S. at 131 ("If the President should possess alone the power of removal from office, those who are employed in the execution of the law will be in their proper situation, and the chain of dependence be preserved; the lowest officers, the middle grade, and the highest, will depend, as they ought, on the President, and the President on the community.") (quoting 1 Annals of Cong. 499 (1789)). The President cannot "take Care that the Laws be faithfully executed" if he is saddled with subordinates who obstruct his agenda. U.S. Const. art. II, § 3.

Aviel flatly refused to follow the President's directives. Her removal for insubordination is within the heartland of the Article II power. "The moment that [the President] loses confidence in the intelligence, ability, judgment or loyalty of any one of [his officers], he must have the power to remove him without delay." *Myers*, 272 U.S. at 134. The President's removal of Aviel was lawful.

2.

The government is also likely to succeed because the district court's order exceeds the judiciary's traditional equitable powers. Even if we were to assume that Aviel's removal was unlawful, the remedies imposed by the district court—a sweeping injunction against the President, the

6

removal of an appointed officer, and the reinstatement of an ousted officer—are beyond the equity powers of the federal courts and inconsistent with longstanding Supreme Court precedent.

First and most remarkably, the district court enjoined the President. The order enjoins all "Defendants," a category that explicitly includes President Trump. *See Aviel*, 2025 WL 1009035, at *1. This is not a mere formality. The injunction proscribes actions that only the President can take because the President is the only Defendant with the statutory authority to appoint IAF Board members. 22 U.S.C. § 290f(g).

The injunction necessarily runs against the President. I do not understand how the injunction can be "construed not to reach the President," Katsas, J., concurring, at 4, when the injunction expressly extends to the President.[3] *Cf. Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *13 n.2 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting) ("My colleagues seek to cure the *Mississippi v. Johnson* problem by excluding the President from the scope of the TRO. But by its terms, the order expressly applies to all 'Defendants.'").

The district court enjoined the President despite the fact that the Supreme Court has long held courts lack authority to "enjoin the President in the performance of his official duties."

---

[3] Although my colleagues point to *Franklin v. Massachusetts* to justify their construction of the injunction, the reasoning of that case is wholly inapposite. 505 U.S. 788 (1992). In *Franklin*, the Court applied a clear statement rule to conclude that the Administrative Procedure Act's definition of "agency" did not include the President. *See id.* at 800–01. Even putting aside the oddity of applying statutory clear statement rules to judicial orders, the district court here *explicitly defined* Defendants to include the President, so we have no grounds to "construe" the injunction otherwise.

7

*Johnson*, 71 U.S. at 501. "The apparently unbroken historical tradition supports the view, … implicit in the separation of powers established by the Constitution, that the principals in whom the executive and legislative powers are ultimately vested—viz., the President and the Congress (as opposed to their agents)—may not be ordered to perform particular executive or legislative acts at the behest of the Judiciary." *Franklin v. Massachusetts*, 505 U.S. 788, 827 (1992) (Scalia, J., concurring). While a court may have some limited ability to enjoin the President to discharge a duty over which he has no discretion, the President's exercise of his appointment and removal authority, core Article II powers essential to his control and supervision of the Executive Branch, "can in no way be denominated as 'ministerial.'" *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *5 n.2 (D.C. Cir. Apr. 7, 2025) (Rao, J., dissenting). Flouting a previously unbroken historical tradition, the district court directly commanded and restrained the President in quintessential executive functions. Because this injunction oversteps the traditional limits on Article III courts, it should be stayed.

Second, the injunction exceeds the district court's equitable authority because it effectively orders Aviel's reinstatement. *See* Order at 1, *Aviel v. Gor*, No. 25-778 (D.D.C. Apr. 4, 2025), ECF No. 23 (enjoining Defendants from removing Aviel as president and CEO and "from otherwise obstructing her ability to carry out the duties of that position"). Reinstatement is not a remedy federal courts sitting in equity may give. "Federal courts have authority to issue only those equitable remedies administered by the English Court of Chancery and courts sitting in equity at the time of the Founding." *Harris*, 2025 WL 1021435, at *5 (Rao, J., dissenting); *see Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999) ("The substantive prerequisites for obtaining an equitable

8

remedy … depend on traditional principles of equity jurisdiction.") (cleaned up). At the Founding, it was well-established that a court sitting in equity had "no jurisdiction over the appointment and removal of public officers." *White v. Berry*, 171 U.S. 366, 377 (1898) (quoting *In re Sawyer*, 124 U.S. 200, 212 (1888)); *see also Bessent v. Dellinger*, 145 S. Ct. 515, 517 (2025) (Gorsuch, J., dissenting). Officers challenging their removals have historically pursued damages, not injunctions mandating their return to office. "The lesson from history is clear: Federal courts have no equitable authority to enjoin the removal or to mandate the reinstatement of executive officers." *Harris*, 2025 WL 1021435, at *5 (Rao, J., dissenting).

Third, the district court erred in finding irreparable harm. A preliminary injunction is an extraordinary and drastic remedy that may issue only if the plaintiff demonstrates that she will suffer irreparable harm absent an injunction. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is … grounds for refusing to issue a preliminary injunction, even if the other three factors … merit such relief."). Aviel fails to meet this threshold. Her primary asserted harm is the loss of her position as CEO of IAF. The Supreme Court has made clear, however, that the loss of employment is normally not enough to show irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 91–92 & n.68 (1974). The loss of income, even when accompanied by reputational damage, "falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case." *Id.* at 91–92. Moreover, as the CEO of a government corporation, Aviel falls within the ambit of the Back Pay Act, which allows for monetary damages upon a finding that an employment action was unjustified. *See* 5 U.S.C. §§ 5596(b), 2105(a). The availability of a statutory

9

remedy further reinforces the inappropriateness of equitable relief in this context.

The district court dodged *Sampson* and concluded that Aviel suffered irreparable harm because "the very survival of her organization is at stake" and "absent immediate injunctive relief, there will be no IAF left for her to lead." *Aviel*, 2025 WL 1009035, at *10. This reasoning improperly conflates Aviel's *personal* harms with the IAF's *programmatic* harms. "The Judiciary should hesitate to adjudicate dispute[s] involving only officials, and the official interests of those, who serve in the branches of the National Government because such disputes lie far from the model of the traditional common-law cause of action at the conceptual core of the case-or-controversy requirement." *Maloney v. Carnahan*, 45 F.4th 215, 223 (D.C. Cir. 2022) (Rao, J., dissenting) (cleaned up).

While Aviel may sue for damages resulting from her removal, she possesses no private right in the powers of her office or the policy direction of the agency. *Cf. Raines v. Byrd*, 521 U.S. 811, 821 (1997) (holding members of Congress lacked standing to sue because the "claim of standing [was] based on a loss of political power, not loss of any *private* right" so "[t]he claimed injury" ran "with the Member's seat, a seat which the Member holds … as trustee for his constituents, not as a prerogative of personal power") (emphasis added). As an officer of the IAF, Aviel executes the laws and acts at the direction of the Board and, ultimately, the President. The notion that public officials "have a separate private right, akin to a property interest, in the powers of their offices" is fundamentally "alien to the concept of a republican form of government." *Barnes v. Kline*, 759 F.2d 21, 50 (D.C. Cir. 1984) (Bork, J., dissenting). Because Aviel's alleged harms are compensable through ordinary legal remedies such as backpay, and she lacks standing to challenge institutional harms, she is

10

not entitled to the extraordinary relief of a preliminary injunction.

Finally, the scope of the district court's injunction exceeds what would be necessary to remedy Aviel's alleged employment injury. An injunction must be tailored to the specific harm shown by the plaintiff. *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (explaining an equitable "remedy must ... be limited to the inadequacy that produced the injury in fact that the plaintiff has established"). This means that "a federal court may not issue an equitable remedy more burdensome to the defendant than necessary to redress the plaintiff's injuries." *Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring) (cleaned up).

Aviel's only cognizable harm is her loss of employment, which is compensable—if at all—through backpay. The district court relied on this individual injury to order the reinstatement of Aviel and the removal of Marocco and to declare "void ab initio" all actions taken by Marocco, including previous grant terminations and attempted reductions in force. The injunction's extreme mismatch between injury and remedy warrants a stay.

B.

The balance of harms also favors a stay. *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (per curiam) ("The purpose of ... interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward.") (cleaned up); *see Nken*, 556 U.S. at 435 (explaining "the harm to the opposing party" and "the public interest" factors "merge when the Government is the opposing party"). The district court's injunction encroaches on the President's constitutional control over the Executive Branch.

11

In granting a stay of district court injunctions that, like the injunction here, ordered reinstatement, the Supreme Court recently concluded that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Wilcox*, 2025 WL 1464804, at *1. In that case, our en banc court had denied the stay. Rather than follow the Supreme Court's lead, my colleagues defer to the en banc decision because the Supreme Court "did not separately address" the remedies question. Katsas, J., concurring, at 4 & n.2. But the Supreme Court did address the remedies question *for the purposes of a stay*. The Court squarely concluded that "[a] stay is appropriate to avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of … litigation."[4] *See Wilcox*, 2025 WL 1464804, at *1.

Not to put too fine a point on it, the Supreme Court disagreed with our en banc court. I would follow the clear direction of our highest court and stay the district court's far-reaching injunction.

\* \* \*

The district court cannot, through a single plaintiff's lawsuit, impose an injunction that overrides the President's appointment and removal powers, manages the IAF, and adjudicates the rights of non-parties. A stay is necessary because the government is likely to succeed on the merits, and

---

[4] If anything, the argument against the reinstatement remedy is stronger here because Aviel has no statutory removal protections implicating the ongoing validity of *Humphrey's Executor*.

12

this remarkable injunction exceeds the traditional equitable power of the federal courts. I respectfully dissent.