IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CRISTOSAL HUMAN RIGHTS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> PETE MAROCCO, in his official capacity as the Acting Deputy Administrator for Policy Planning and for Management and Resources for the U.S. Agency for International Development and Director of Foreign Assistance at the Department of State, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:25-cv-857-LLA |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF CROSS-MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................................1

ARGUMENT ..........................................................................................................................................3

I.   *NIH* confirms that this Court lacks subject-matter jurisdiction over Plaintiffs' claims pertaining to grant terminations. ...................................................................................................3

II.  If this Court possesses jurisdiction over Plaintiffs' constitutional, APA, and ultra vires claims, *Global Health Council* confirms those claims must be dismissed. ..............................4

   A.   *Global Health Council* confirms that Plaintiffs' separation-of-powers claim fails. ............8

   B.   *Global Health Council* confirms that Plaintiffs' ultra vires claim alleging impoundment fails. ...........................................................................................................11

   C.   *Global Health Council* confirms that Plaintiffs' contrary-to-law APA claim fails. .........12

III. In the event of further proceedings in *Global Health Council*, a stay pending resolution of those proceedings is appropriate. ...............................................................................................14

CONCLUSION ....................................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Aids Vaccine Advoc. Coal. v. U.S. Dep't of State*,
  770 F. Supp. 3d 121 (D.D.C. 2025) .................................................................... 4, 5, 6, 11

*Air Line Pilots Ass'n v. Miller*,
  523 U.S. 866 (1998) ............................................................................................................. 14

*Amica Ctr. for Immigrant Rts. v. U.S. Dep't of Just.*,
  No. CV 25-298 (RDM), 2025 WL 1852762 (D.D.C. July 6, 2025) ..................... 13

*Block v. Cmty. Nutrition Inst.*,
  467 U.S. 340 (1984) ............................................................................................... 7, 12, 13

*Changji Esquel Textile Co. v. Raimondo*,
  40 F.4th 716 (D.C. Cir. 2022) ............................................................................... 7, 11

*Climate United Fund v. Citibank, N.A.*,
  --- F.4th----, 2025 WL 2502881 (D.C. Cir. Sept. 2, 2025) ........................................ 4

*Nuclear Regul. Comm'n v. Texas*,
  605 U.S. 665 (2025) ............................................................................................................... 8

*Dalton v. Specter*,
  511 U.S. 462 (1994) ................................................................................................... 6, 9

*Dep't of Educ. v. California*,
  145 S. Ct. 966 (2025) ................................................................................................. 1, 3

*Doe v. Rumsfeld*,
  683 F.3d 390 (D.C. Cir. 2012) ................................................................................... 9

*Glob. Health Council v. Trump*,
  No. 25-5097, 2025 WL 2326021 (D.C. Cir. Aug. 13, 2025) ..................................... 4

*Global Health Council v. Trump*,
  --- F.4th ----, 2025 WL 2480618 (D.C. Cir. Aug. 28, 2025) ............................. *passim*

*In re Aiken Cnty.*,
  725 F.3d 255 (D.C. Cir. 2013) ................................................................................ 6, 9

*J. Rotenberg Educ. Ctr., Inc. v. FDA*,
  3 F.4th 390 (D.C. Cir. 2021) ........................................................................................ 10

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ............................................................................................................ 14

*National Treasury Employees Union v. Vought,*
   --- F.4th ----, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025) ............................................... 2, 11

*Nat'l Indus. for Blind v. Dep't of Veterans Affs.,*
   296 F. Supp. 3d 131 (D.D.C. 2017) ........................................................................................ 14

*Nat'l Institutes of Health v. Am. Pub. Health Ass'n,*
   606 U.S. ----, 2025 WL 2415669 (U.S. Aug. 21, 2025) ..................................................... 1, 3, 4

*Youngstown Sheet & Tube Co. v. Sawyer,*
   343 U.S. 579 (1952) .................................................................................................................. 6, 9

**Statutes**

2 U.S.C. § 681 .................................................................................................................................. 5

2 U.S.C. § 681(3) ............................................................................................................................. 7

2 U.S.C. § 682 .................................................................................................................................. 7

Pub. L. No. 93-344, tit. X, 88 Stat. 297, 332–39 (1976) ............................................................... 5

Pub. L. No. 97-258, 96 Stat. 877 (1982) ......................................................................................... 5

Pub. L. No. 118-47, div. F, tit. III, 138 Stat. 460 (2024) .............................................................. 9

**Other Authorities**

*Reevaluating and Realigning United States Foreign Aid, (Jan. 30, 2025),*
   Executive Order No. 14169 ........................................................................................................ 6

*Commencing the Reduction of the Federal Bureaucracy, (Feb. 25, 2025),*
   Executive Order No. 14,217 ..................................................................................................... 10

**INTRODUCTION**

Recent binding precedent confirms that this Court lacks jurisdiction over Plaintiffs' claims pertaining to the termination of their grant agreements and that, even if this Court possesses jurisdiction, those claims should be dismissed because Plaintiffs lack a cause of action.

First, the Supreme Court's recent order in *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 606 U.S. ----, 2025 WL 2415669, at *1 (U.S. Aug. 21, 2025) ("*NIH*"), confirmed that this Court lacks jurisdiction over claims challenging the termination of grant agreements. There, the Court was presented with the National Institutes of Health's application for a stay of district court judgments vacating the Government's guidance regarding funding certain types of research and the Government's termination of grants related to that research. The Court granted the stay as to the judgments vacating the Government's termination of the grants, reiterating its earlier conclusion in *Department of Education v. California*, 145 S. Ct. 966 (2025) (*per curiam*) ("*California*"), that the Administrative Procedure Act's (APA) limited waiver of sovereign immunity does not confer jurisdiction for district courts to adjudicate claims based on the termination of grant agreements or to order relief to enforce any obligation to pay money under those grant agreements. Those challenges can be resolved only in the Court of Federal Claims. That determination controls as to Plaintiffs' claims seeking reinstatement of the terminated grant agreements here.

But even if this Court exercises jurisdiction over those claims, the D.C. Circuit's opinion in *Global Health Council v. Trump*, --- F.4th ----, 2025 WL 2480618 (D.C. Cir. Aug. 28, 2025), confirms that Plaintiffs' claims concerning the alleged refusal of the Inter-American Foundation to spend appropriated funding should be dismissed. The D.C. Circuit in that case held that funding recipients lack a cause of action under the Constitution, the ultra vires doctrine, or the APA (insofar as Plaintiffs seek to enforce the Impoundment Control Act) to allege that the Executive Branch impounded appropriated funds.

1

The D.C. Circuit's analysis of the constitutional separation-of-powers claim in *Global Health Council* controls as to the identical claim brought by Plaintiffs. As in that case, Plaintiffs here alleged that Defendants violated the separation of powers by refusing to spend funds that Congress appropriated for foreign aid in the 2024 Appropriations Act. Indeed, Plaintiffs repeatedly invoked as support for their position the very district court decision on this question that *Global Health Council* vacated. So too here, then, this Court must hold that Plaintiffs lack a cause of action under the U.S. Constitution to assert such a claim. Nor may Plaintiffs premise their separation-of-powers claim on the allegedly unlawful downsizing of the Foundation. Although not addressed in *Global Health Council*, the D.C. Circuit subsequently held that claims challenging the alleged shuttering of an agency as a violation of the separation of powers may not be brought under the constitution. *See National Treasury Employees Union v. Vought*, --- F.4th ----, 2025 WL 2371608, at *19-20 (D.C. Cir. Aug. 15, 2025). Under either formulation, then, Plaintiffs lack a cause of action under the constitution for their separation-of-powers claim, which must be dismissed.

The D.C. Circuit's ruling in *Global Health Council* is similarly controlling as to Plaintiffs' ultra vires claim premised on violations of the Impoundment Control Act, the Anti-Deficiency Act, and the 2024 Appropriations Act. As the D.C. Circuit held, the refusal to spend certain sums cannot be contrary to a clear and mandatory prohibition contained in any of those statutes because those statutes contemplate processes for the Executive Branch to do just that. And as the D.C. Circuit explained in *Global Health Council*, Supreme Court precedent precludes the grantees from recasting a typical statutory-authority argument as an ultra vires claim.

Finally, *Global Health Council* forecloses Plaintiffs' contrary-to-law claim under the APA premised on the Impoundment Control Act. As the D.C. Circuit explained, funding recipients lack a cause of action under the APA to challenge alleged impoundments as contrary to that statute because

2

the Impoundment Control Act itself provides an exclusive scheme for review of such claims. That holding applies with equal force to Plaintiffs' indistinguishable APA claim here.

## ARGUMENT

### I. *NIH* confirms that this Court lacks subject-matter jurisdiction over Plaintiffs' claims pertaining to grant terminations.

In *NIH*, the Supreme Court granted the Government's request for a stay as to district court judgments vacating the termination of research-related grants, finding that the district court lacked jurisdiction to hear claims based on an "obligation to pay money" pursuant to the terms of federal grant agreements. *See* 2025 WL 2415669, at *1. Specifically, in *NIH*, the Supreme Court reiterated its prior holding in *Department of Education v. California* that "[t]he Administrative Procedure Act's 'limited waiver of [sovereign] immunity' does not provide the District Court with jurisdiction to adjudicate claims 'based on' the research-related grants or to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *Id.* (citing *California*, 145 S. Ct. at 968). Defendants similarly argued that the Supreme Court's decision in *California* precludes jurisdiction here. *See* Combined Mem. in Supp. of Defs.' Cross-Mot to Dismiss ("Defs.' Mem.") at 12-23, ECF No. 25-1.

The Supreme Court's ruling in *NIH* confirms that *California* controls in cases challenging grant terminations. In *NIH*, the Supreme Court found that "the District Court likely lacked jurisdiction to hear challenges to the grant terminations, which belong in the Court of Federal Claims." *NIH*. 2025 WL 2415669, at *2 (Barrett, J., concurring). Justice Barrett explains further that, insofar as claims challenge agency guidance documents, those claims can be disaggregated from "a claim 'founded . . . upon' contract that only the [Court of Federal Claims] can hear." *Id.* (Barrett, J., concurring) (citation omitted).

Here, Plaintiffs do not challenge binding agency guidance; rather, they seek to undo grant terminations and receive funds owed under those agreements. *See, e.g.*, Compl. ¶ 111, ECF No. 1 ("Defendants' decision to unilaterally cancel all of the Foundation's grants constituted arbitrary and

3

capricious action."). As in *NIH* and *California*, Plaintiff's "injury and alleged right to payment stem from the government's refusal to pay promised grants according to the terms and conditions that accompany them." *NIH*, 2025 WL 2415699, at *3-4 (Gorsuch, J., concurring). Indeed, the D.C. Circuit recently reiterated that *California* and *NIH* preclude a district court from exercising jurisdiction over grantees' APA challenges to grant terminations. *See Climate United Fund v. Citibank, N.A.*, --- F.4th----, 2025 WL 2502881, at *8 (D.C. Cir. Sept. 2, 2025) ("The Court's reasoning requires respect and strongly supports our conclusion that the grantees' arbitrary and capricious challenge to the grant terminations is a disguised contract claim that cannot be heard in district court."). Accordingly, this Court lacks jurisdiction over Plaintiffs' constitutional separation-of-powers claim, APA claims, and ultra vires claim concerning the termination of Plaintiffs' grants because each of those claims seeks payment under grant agreements.[1]

## II. If this Court possesses jurisdiction over Plaintiffs' constitutional, APA, and ultra vires claims, *Global Health Council* confirms those claims must be dismissed.

The D.C. Circuit in *Global Health Council* addressed an appeal from a preliminary injunction obtained by various recipients of foreign-assistance funds in response to the Department of State's and USAID's suspension or termination of thousands of grant awards as part of major restructuring and downsizing efforts. *See Glob. Health Council*, 2025 WL 2480618, at *3; *see also Aids Vaccine Advoc. Coal. v. U.S. Dep't of State*, 770 F. Supp. 3d 121 (D.D.C. 2025) ("*AVAC*"), *vacated and remanded sub nom. Glob. Health Council v. Trump*, No. 25-5097, 2025 WL 2326021 (D.C. Cir. Aug. 13, 2025), *as amended*, 2025 WL 2480618 (Aug. 28, 2025).[2]

---

[1] Defendants acknowledge that the Supreme Court's decisions in *California* and *NIH* do not preclude this Court from exercising jurisdiction over Plaintiffs' claim concerning the appointment of Peter Marocco to the Foundation's Board, which is Plaintiffs' only claim that does not arise from the termination of Plaintiffs' grant agreements. That claim fails for the reasons Defendants previously provided. *See* Defs.' Mem. at 32-35.

[2] As explained *infra* p. 7, the D.C. Circuit amended its decision in *Global Health Council* when denying plaintiffs-appellees' petition for rehearing *en banc*. All citations are to the amended decision.

4

The grantees brought three categories of claims to challenge those government actions. The first category contained claims under the U.S. Constitution alleging that the Department of State's and USAID's downsizing violated the separation of powers and the Take Care Clause. *Glob. Health Council*, 2025 WL 2480618, at *3. The second category of claims were brought under the APA, alleging that the termination and suspension of grant agreements was arbitrary and capricious and that USAID's downsizing was contrary to various statutes, including the Impoundment Control Act of 1974, Pub. L. No. 93-344, tit. X, 88 Stat. 297, 332–39 (codified at 2 U.S.C. § 681 *et seq.*), and the Anti-Deficiency Act, Pub. L. No. 97-258, 96 Stat. 877 (1982). *Glob. Health Council*, 2025 WL 2480618, at *3. The third and final category of claims alleged that the government's actions were ultra vires because defendants exceeded their statutory authority.

As to the impoundment claims, the district court held that the grantees "were likely to succeed in showing that the executive branch was unlawfully 'engaging in a unilateral rescission or deferral of congressionally appropriated funds in violation of Congress's spending power.'" *Glob. Health Council*, 2025 WL 2480618, at *4 (quoting *AVAC*, 770 F. Supp. 3d at 143). The district court further found "no indication that the President had complied with the procedures required by the [Impoundment Control Act] or the Anti-Deficiency Act for impounding congressionally appropriated funds and thus reasoned that his actions likely violated the three statutes at issue and the Constitution." *Id.* (citing *AVAC*, 770 F. Supp. 3d at 144-48 & nn.14, 18). And the district court "rejected the government's arguments that the grantees cannot bring a freestanding constitutional claim and that the ICA precludes the grantees from bringing an impoundment suit under the APA." *Id.* (citing *AVAC*, 770 F. Supp. 3d at 148 n.17). Finally, the district court "held that the defendants likely acted ultra vires." *Id.* (citing *AVAC*, 770 F. Supp. 3d at 148 n.18).

Accordingly, the district court issued a two-part preliminary injunction. At issue before the D.C. Circuit was the part of the injunction that "enjoined the government . . . 'from unlawfully

5

impounding congressionally appropriated foreign aid funds' and ordered" the government "to 'make available for obligation the full amount of funds' appropriated in the 2024 Appropriations Act." *Id.* (quoting *AVAC*, 770 F. Supp. 3d at 155).[3]

The D.C. Circuit vacated that part of the preliminary injunction. *Id.* at *5. The court held that "the district court committed legal error" because the grantee plaintiffs lacked a cause of action to bring their constitutional, APA, and ultra vires claims. *Id.*

As to the constitutional claim, the court held that the funding recipients could not assert "a non-statutory right to vindicate separation-of-powers principles" because the Supreme Court had squarely rejected an indistinguishable "effort to recast statutory claims as constitutional ones" in *Dalton v. Specter*, 511 U.S. 462 (1994). *Glob. Health Council*, 2025 WL 2480618, at *6-7. The court explained that the Supreme Court's opinion in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), was not to the contrary because that case "involved the conceded *absence* of *any* statutory authority, not a claim that the President acted in excess of such authority." *Glob. Health Council*, 2025 WL 2480618, at *7 (quoting *Dalton*, 511 U.S. at 473). The D.C. Circuit's decision in *In re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013), was also distinguishable because "that case involved a writ of mandamus under the APA to compel federal officers to perform a statutory duty unreasonably withheld rather than a constitutional cause of action." *Glob. Health Council*, 2025 WL 2480618, at *8. The court concluded "that *Dalton* controls this case and the grantees lack a cause of action to bring their freestanding constitutional claim." *Id.* at *9.

---

[3] The district court also enjoined defendants "from enforcing or giving effect to sections 1, 5, 7, 8, and 9 of the January 24 State Department memorandum, and any other directives that implement sections 3(a) and 3(c) of Executive Order No. 14169, by giving effect to any terminations, suspensions, or stop-work orders issued between January 20, 2025, and February 13, 2025, for any grants, cooperative agreements, or contracts for foreign assistance." *AVAC*, 770 F. Supp. 3d at 155. That portion of the preliminary injunction was not appealed.

6

As to the APA claim asserting that the government's actions were contrary to the Impoundment Control Act, the D.C. Circuit held that the APA does not confer a cause of action for such a claim because the Impoundment Control Act implicitly precludes judicial review through its "detailed mechanism for judicial consideration of particular issues at the behest of particular persons." *Id.* at *9-10 (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984)). The Impoundment Control Act provides such a mechanism through its "complex scheme of notification of the Congress, congressional action on a proposed rescission or deferral and suit by a specified legislative branch official if the executive branch violates its statutory expenditure obligations." *Id.* at *10 (citing 2 U.S.C. § 682 *et seq.*). The court further explained that the Impoundment Control Act's disclaimer that nothing in it "shall be construed" as "affecting in any way the claims or defenses of any party to litigation concerning any impoundment," 2 U.S.C. § 681(3), did not authorize any aggrieved party to *initiate* litigation. *Glob. Health Council*, 2025 WL 2480618, at *11.

As amended, *Global Health Council* made clear that the court's holding that the grantee plaintiffs lacked a cause of action under the APA addressed only the Impoundment Control Act aspect of the grantee plaintiffs' contrary-to-law claim because "[t]he district court appears to have limited its APA preclusion holding to" that statute. 2025 WL 2480618, at *11 n.17. Accordingly, the court did "not decide whether the [Impoundment Control Act] precludes suits under the APA to enforce appropriations acts." *Id.*

As to the ultra vires claim that the challenged executive action had exceeded defendants' statutory authority, the D.C. Circuit held that the grantees failed to assert a valid cause of action because the challenged action was not "'plainly' in 'excess of the agency's delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Id.* at *12 (quoting *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022)). The Impoundment Control Act, the court explained, "provides that the Executive may carry out lawful impoundments subject to

7

certain procedures and restrictions and the grantees can point to no specific prohibition the defendants have violated to an extreme and nearly jurisdictional degree." *Id.* The D.C. Circuit also emphasized that the grantee plaintiffs failed to heed the Supreme Court's instruction that "parties may not 'dress up a typical statutory-authority argument as an ultra vires claim.'" *Id.* (quoting *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 682 (2025)).

Finally, the D.C. Circuit addressed the remaining *Winter* factors for issuance of a preliminary injunction and concluded that those factors "do not 'strongly favor' an injunction." *Glob. Health Council*, 2025 WL 2480618, at *13 (citation omitted). As to irreparable harm, the court emphasized that the record was insufficiently developed "about how long the grantees could financially continue without the opportunity to compete for impounded funds as opposed to the funds from existing contracts and why being denied immediate relief as to that opportunity would cause harm the grantees would not suffer anyway." *Id.* On the remaining preliminary injunction factors, the court explained that "we have no occasion to address whether there has been a constitutional or statutory violation because the grantees lack a cause of action." *Id.* The court also emphasized that the factor could not weigh "strongly" in favor of an injunction because "it is not clear how to balance a public interest asserted on behalf of the Congress against the public interest asserted by the Executive." *Id.*

On these bases, the D.C. Circuit "vacate[d] the district court's preliminary injunction and remand[ed] for further proceedings." *Id.* at *14. For the reasons explained below, those holdings control as to the indistinguishable claims that Plaintiffs advanced here.

**A.  *Global Health Council* confirms that Plaintiffs' separation-of-powers claim fails.**

The D.C. Circuit's decision in *Global Health Council* disposes of Plaintiffs' separation-of-powers claim. As in that case, Plaintiffs here argued that "Defendants have violated the separation of powers by continuing to impound congressionally appropriated funds." Mem. in Supp. Of Pls.' Mot. For Summ. J. ("Pls.' Mem."), ECF No. 24-1 at 28. Also as in that case, Plaintiffs here specifically identified

8

the Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, div. F, tit. III, 138 Stat. 460, as compelling the expenditure of appropriated funds and the Executive Branch's failure to do so as a violation of the separation of powers. *Compare* Pls.' Mem. at 29 *with Glob. Health Council*, 2025 WL 2480618, at *6 ("The district court held in the main that the grantees were likely to succeed on their constitutional claim that the government violated separation-of-powers principles by impounding funds in violation of the 2024 Appropriations Act, the ICA and the Anti-Deficiency Act."). And Plaintiffs here relied on the same principal authorities that the plaintiff-grantees invoked in *Global Health Council*—*Youngstown*, 343 U.S. 579, and *In re Aiken Cnty.*, 725 F.3d at 260. *See* Pls.' Mem. at 28-29. Indeed, Plaintiffs cited the now-vacated district court decision in *AVAC* multiple times in support of this claim in both their summary judgment submissions. *See* Pls.' Mem. at 29; Combined Reply in Supp. of Pls.' Mot. For Summ. J., ("Pls.' Reply'), ECF No. 29 at 18, 19.[4]

Accordingly, because the constitutional claim concerning impoundment advanced by Plaintiffs here is indistinguishable from the separation-of-powers claim that the D.C. Circuit rejected in *Global Health Council*, the D.C. Circuit's conclusion is controlling. There, like here, "the grantees assert a non-statutory right to vindicate separation-of-powers principles but they are foreclosed from doing so by *Dalton*, 511 U.S. 462." *Glob. Health Council*, 2025 WL 2480618, at *6. Plaintiffs thus lack a cause of action to assert a constitutional separation-of-powers claim, and that claim must be dismissed. *See, e.g., Doe v. Rumsfeld*, 683 F.3d 390, 397 (D.C. Cir. 2012) (holding that a plaintiff's claim must be dismissed in the absence of a cause of action).

---

[4] Nor can there be any question that Defendants properly raised the arguments that the D.C. Circuit adopted in *Global Health Council*. Defendants directly argued that "Plaintiffs' separation-of-powers claim seeks to transform a dispute over statutory interpretation . . . into a constitutional dispute," citing *Dalton*, 511 U.S. at 473-74, for the proposition that such claims are not properly brought under the constitution. Defs.' Mem. at 25-26; *see also* Reply in Supp. of Defs.' Cross-Mot. to Dismiss ("Defs.' Reply"), ECF No. 30 at 14.

To be sure, Plaintiffs at summary judgment attempted to premise their separation-of-powers claim on two purportedly distinct bases—Defendants' alleged actions to "abolish the agency itself" and Defendants' alleged actions "to impound congressionally appropriated funds," Pls.' Mem. at 28. Defendants anticipate that Plaintiffs will argue that the D.C. Circuit's decision in *Global Health Council* addressed only the latter formulation of their separation-of-powers claim, and that the former survives. But there is no principled distinction between the two formulations. The alleged actions to "abolish the agency itself" are one and the same as the alleged actions to impound congressionally-appropriated funds the Inter-American Foundation reducing its footprint by refusing to spend appropriated funds.[5]

And even if there were some principled distinction between the two formulations of Plaintiffs' claim (there is not), the D.C. Circuit's holding in *Global Health Council* would still require dismissal of both formulations. That is because the non-impoundment formulation of Plaintiffs' separation-of-powers claim also rests on an alleged violation of a statute—Defendants' failure to maintain the Inter-American Foundation according to Congress's specifications. Indeed, as Plaintiffs argue, "Federal agencies are creatures of statute." Pls.' Mem. 26 (quoting *J. Rotenberg Educ. Ctr., Inc. v. FDA*, 3 F.4th 390, 399 (D.C. Cir. 2021)). So the question presented is whether Defendants' actions to downsize the footprint of the Inter-American Foundation have violated the statutes creating the Foundation. That claim is therefore statutory for the same reasons provided in *Global Health Council*.

The D.C. Circuit's subsequent decision in *National Treasury Employees Union v. Vought* confirms as much. There, the D.C. Circuit addressed a separation-of-powers claim that rested on "the premise that shutting down the [Consumer Financial Protection Bureau] would violate the statutes that create

---

[5] As previously explained, *see* Defs.' Mem. at 26, Defendants have not "abolished" the Inter-American Foundation, but instead merely implemented the President's Executive Order No. 14,217, which directed that "the non-statutory components and functions of" the Inter-American Foundation, among other agencies, "shall be eliminated to the maximum extent consistent with applicable law, and such entities shall reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law." Exec. Order No. 14,217 § 2(a).

10

the agency and require it to perform various mandatory tasks. Because CFPB leadership decided to violate these statutes, the argument goes, it 'also violate[d] the constitutional separation-of-powers doctrine.'" 2025 WL 2371608, at *20 (citation omitted). The D.C. Circuit explained that "[t]his supposed separation-of-powers violation turns entirely on whether CFPB officials violated the governing statutes," so cannot be brought under the Constitution. *Id.* (citation omitted). That holding controls here as to Plaintiffs' separation-of-powers claim concerning the downsizing of the Inter-American Foundation.

### B. *Global Health Council* confirms that Plaintiffs' ultra vires claim alleging impoundment fails.

Plaintiffs' ultra vires claim concerning impoundment similarly cannot survive the D.C. Circuit's decision in *Global Health Council*.[6] As in that case, Plaintiffs here argued that the Impoundment Control Act and Anti-Deficiency Act prohibited the President from withholding or refusing to spend congressionally-appropriated funds. *See* Pls.' Mem. 30-31. And as with their constitutional claim, Plaintiffs relied on the now-vacated *AVAC* decision in support of this claim. *Id.* at 31 (citing *AVAC*, 2025 WL 752378, at *15-*16). Here, too, then, Plaintiffs cannot assert an ultra vires claim premised on the Impoundment Control Act and Anti-Deficiency Act because those statutes "provide[] that the Executive may carry out lawful impoundments subject to certain procedures and restrictions." *Global Health Council*, 2025 WL 2480618, at *12. Plaintiffs therefore cannot establish that the challenged actions are "'plainly . . . contrary to a specific prohibition in the statute that is clear and mandatory.'" *Id.* (quoting *Changji Esquel Textile Co.*, 40 F.4th at 722).

---

[6] Defendants do not contend that *Global Health Council* bears on Plaintiffs' ultra vires claim concerning the appointment of Peter Marocco as an acting Chair of the Board of the Inter-American Foundation. That formulation of the ultra vires claim fails for the reasons Defendants previously provided. *See* Defs.' Mem. at 32-35.

11

### C. *Global Health Council* confirms that Plaintiffs' contrary-to-law APA claim fails.

*Global Health Council* also requires dismissal of Plaintiffs' contrary-to-law APA claim premised on an alleged failure to comply with the Impoundment Control Act and the Anti-Deficiency Act. As in *Global Health Council*, Plaintiffs here argued that "Defendants blanket denial of access to congressionally appropriated funding is contrary to law" set out in those statutes. Pls.' Mem. at 39-40. Such a claim cannot be brought under the APA because the APA's general cause of action does not apply where "the relevant statute 'precludes judicial review.'" *Glob. Health Council*, 2025 WL 2480618, at *9. Here, the Impoundment Control Act precludes APA review of impoundment-related claims because it provides "complex scheme of notification of the Congress, congressional action on a proposed rescission or deferral and suit by a specified legislative branch official if the executive branch violates its statutory expenditure obligations." *Id.* at *10 (citation omitted). And "it does not make sense that the Congress would craft a complex scheme of interbranch dialogue but *sub silentio* also provide a backdoor for citizen suits at any time and without notice to the Congress of the alleged violation." *Id.* (citation omitted). "Accordingly, the grantees" here, as in *Global Health Council*, "have no cause of action to undergird their APA contrary-to-law claim." *Id.* at *11.

Moreover, although the D.C. Circuit in *Global Health Council* had no occasion to address the issue, *see* 2025 WL 2480618, at *11 n.17, the complex scheme set up by the Impoundment Control Act forecloses an APA cause of action even if Plaintiffs were to restyle their claim as seeking to enforce the underlying appropriations statute rather than the Impoundment Control Act itself. What determines whether any "statutes preclude judicial review" within the meaning of 5 U.S.C. 701(a)(1), is whether "[a]llowing" the plaintiff "to sue" the defendants "would severely disrupt [a] complex and delicate administrative scheme." *Block*, 467 U.S. at 348. The ICA's complex, reticulated scheme reflects Congress's view of when appropriations are mandatory and when they can be rescinded. In evaluating whether the government violated its obligations under the appropriations statutes, a court

12

cannot simply ignore the comprehensive statute that governs interbranch disputes about the expenditure of appropriated funds. And under that comprehensive statute, the Executive Branch can be relieved from the ICA's default obligation to spend appropriated funds. If the Executive Branch determines that funds are unnecessary for obligation, the ICA requires a special message from the President to Congress, gives Congress a chance to respond, contemplates an interbranch back-and-forth, and ultimately authorizes the Comptroller General to investigate and potentially litigate after prior notice to Congress. Plaintiffs' suit to force the government to obligate those funds would thus "severely disrupt" the ICA's "complex and delicate administrative scheme." *Block*, 467 U.S. at 348.

Principles of APA preclusion thus prohibit private litigants from hijacking that reticulated process, displacing the Comptroller General, and bringing a suit that Congress might not want to challenge the same underlying action—the refusal to obligate funds—through the simple expedient of pointing to the relevant appropriations statute, not the ICA. Otherwise, private litigants could circumvent the ICA as to virtually any appropriations, claiming that the underlying appropriations statutes require faster or different obligations of funds regardless of whether the political branches are poised to resolve those same disputes via the ICA's procedures.

To be sure, Plaintiffs advanced two additional APA claims: that the termination of Plaintiffs' grant agreements was arbitrary and capricious and that the Department of Treasury has a mandatory, nondiscretionary duty to disburse funds requested from the Foundation. Even assuming this Court has jurisdiction over those claims (and it does not, *supra* pp. 3-4), those claims fail for the reasons Defendants previously provided. *See* Defs.' Mem. at 37-40. Indeed, subsequent caselaw reinforces those arguments, as courts in this District have dismissed arbitrary-and-capricious APA claims because the termination of grants is committed to agency discretion by law. *See, e.g.*, *Amica Ctr. for Immigrant Rts. v. U.S. Dep't of Just.*, No. CV 25-298 (RDM), 2025 WL 1852762, at *14 (D.D.C. July 6, 2025) ("[T]he Court's analysis begins and ends with *Lincoln*. Like the program in *Lincoln*, FGLOP and CCI

13

were discretionarily funded through EOIR's lump sum appropriations. Defendants' decision to discontinue these programs and reallocate their resources is similarly unreviewable.").

### III. In the event of further proceedings in *Global Health Council*, a stay pending resolution of those proceedings is appropriate.

Finally, this Court directed the parties to "address whether this court should stay this matter pending disposition of" a petition for rehearing in *Global Health Council*. Minute Order (D.D.C. Aug. 13, 2025). Although that petition has now been resolved, Defendants nonetheless address the prospect of future appellate proceedings in *Global Health Council* because the government has filed a new application for a partial stay of the preliminary injunction issued by the district court in that case. *See* Application for Partial Stay, No. 25A, *Trump v. Global Health Council*, No. 25A (U.S., Sep. 8, 2025).

For the reasons Defendants previously provided, Defendants ask this Court to exercise its discretion stay this proceeding pending resolution of *Aviel v. Gor*, No. 1:25-cv-778 (D.D.C.), which may moot the instant action entirely. *See* Defs.' Mem. at 11-12. Defendants additionally acknowledge that future proceedings in *Global Health Council* may be instructive for the resolution of this action. Accordingly, Defendants have no objection to this Court exercising its "broad discretion" to stay proceedings in the instant action "pending the resolution of" further related appellate proceedings, including the new application for partial stay. *See Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131, 137 (D.D.C. 2017) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998)).

### CONCLUSION

For these reasons, this Court should dismiss Count I because Plaintiffs lack a cause of action under the U.S. Constitution, Count II as to the alleged impoundment of appropriated funds because Plaintiffs lack an ultra vires cause of action, and Count IV because challenges to termination of grant agreements belong in the Court of Federal Claims or, in the alternative, because Plaintiffs lack a cause

14

of action under the APA to challenge alleged impoundment of appropriated funds as contrary to that statute.

Dated: September 8, 2025            Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

JOSEPH E. BORSON
*Assistant Branch Director*

/s/ *Alexander W. Resar*
ALEXANDER W. RESAR
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 616-8188
Email: alexander.w.resar@usdoj.gov

*Counsel for Defendants*